

EXHIBIT
A

# COMMONWEALTH OF VIRGINIA



ROCKBRIDGE CIRCUIT COURT
Civil Division
COURTHOUSE, 20 S. RANDOLPH ST, SUITE 101
LEXINGTON VA
(540) 463-2232

Summons

To: RUMMEL, KLEPPER, & KAHL , LLP
CT CORPORATION SYSTEM
4701 COX ROAD SUITE 285
GLEN ALLEN VA 23060

Case No. 163CL17000007-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, January 12, 2017

Clerk of Court:  D. BRUCE PATTERSON

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:   HARVEY, JAMES R; III
101 W MAIN STREET, SUITE 500
NORFOLK VA 23510

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. ............................................
(CLERK'S OFFICE USE ONLY)

........................................................ Circuit Court

Rockbridge County

W.C. English, Inc. ...................... v./In re: ...... Rummel, Klepper & Kahl, LLP and
PLAINTIFF(S)                                            DEFENDANT(S)

                                                        CDM Smith, Inc.

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [X] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
  - [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

**WRITS**
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

**MISCELLANEOUS**
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify) ..............................

[X] Damages in the amount of $ 3,312,823.00 ................ are claimed.

01/10/2017
DATE                [ ] PLAINTIFF  [ ] DEFENDANT  [X] ATTORNEY FOR  [X] PLAINTIFF
                                                                     [ ] DEFENDANT

James R. Harvey, III, Esquire
PRINT NAME

Vandeventer Black LLP, 101 W. Main Street, Suite 500
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

Norfolk, VA 23510        757-446-8600

JHarvey@VanBlackLaw.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 07/16

## Civil Action Type Codes
## (Clerk's Office Use Only)

Accounting .............................................. ACCT
Adoption ................................................... ADOP
Adoption – Foreign ................................. FORA
Adult Protection ...................................... PROT
Aid and Guidance ....................................... AID
Amend Death Certificate ........................... ADC
Annexation ............................................... ANEX
Annulment ............................................... ANUL
Annulment – Counterclaim/Responsive Pleading... ACRP
Appeal/Judicial Review
    ABC Board .............................................. ABC
    Board of Zoning ................................... ZONE
    Compensation Board .......................... ACOM
    DMV License Suspension .......................... JR
    Employment Commission ...................... EMP
    Employment Grievance Decision ......... GRV
    Local Government ............................... GOVT
    Marine Resources ................................. MAR
    School Board ............................................ JR
    Voter Registration ............................... AVOT
    Other Administrative Appeal ............... AAPL
Appointment
    Conservator of Peace ............................. COP
    Church Trustee ..................................... AOCT
    Custodian/Successor Custodian (UTMA) ......UTMA
    Guardian/Conservator ......................... APPT
    Marriage Celebrant ............................. ROMC
    Standby Guardian/Conservator ........... STND
Approval of Transfer of Structured Settlement .......... SS
Asbestos Litigation ...................................... AL
Attachment .................................................. ATT
Bond Forfeiture Appeal ............................. BFA
Child Abuse and Neglect – Unfounded Complaint ..CAN
Civil Contempt .......................................... CCON
Claim Impleading Third Party Defendant –
    Monetary Damages/No Monetary Damages ......... CTP
Complaint – (Miscellaneous) .................... COM
Compromise Settlement ........................... COMP
Condemnation .......................................... COND
Confessed Judgment ...................................... CJ
Contract Action ........................................ CNTR
Contract Specific Performance ................. PERF
Counterclaim – Monetary Damages/No Monetary
    Damages ..................................................... CC
Cross Claim .............................................. CROS
Declaratory Judgment .............................. DECL
Declare Death ........................................... DDTH
Detinue ....................................................... DET
Divorce
    Complaint – Contested/Uncontested ........DIV
    Counterclaim/Responsive Pleading ......... DCRP
    Reinstatement – Custody/Visitation/Support/
    Equitable Distribution .......................... CVS
Driving Privileges
    Reinstatement pursuant to § 46.2-427 ............. DRIV
    Restoration – Habitual Offender or
    3rd Offense ............................................ REST

Ejectment ................................................. EJET
Encumber/Sell Real Estate ........................... RE
Enforce Vendor's Lien .............................. VEND
Escheatment ............................................... ESC
Establish Boundaries ................................ ESTB
Expungement .......................................... XPUN
Forfeiture of Property or Money ............. FORF
Freedom of Information ............................. FOI
Garnishment .......................................... GARN
Injunction .................................................. INJ
Intentional Tort ...................................... ITOR
Interdiction ............................................. INTD
Interpleader ............................................. INTP
Interrogatory ........................................... INTR
Judgment Lien – Bill to Enforce ............. LIEN
Landlord/Tenant .......................................... LT
Law Enforcement/Public Official Petition ..........LEP
Mechanics Lien ...................................... MECH
Medical Malpractice ................................. MED
Motor Vehicle Tort ..................................... MV
Name Change .............................................. NC
Other General Tort Liability .................. GTOR
Partition ................................................... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) ......................... PET
Product Liability ..................................... PROD
Quiet Title ................................................... QT
Referendum Elections .............................. ELEC
Reinstatement (Other than divorce or driving
    privileges) ............................................. REIN
Removal of Case to Federal Court ............ REM
Restore Firearms Rights – Felony ........... RFRF
Restore Firearms Rights – Review ......... RFRR
Separate Maintenance ................................ SEP
Separate Maintenance – Counterclaim/Responsive
    Pleading ................................................ SCRP
Sever Order ............................................. SEVR
Taxes
    Correct Erroneous State/Local .............. CTAX
    Delinquent ............................................ DTAX
Termination of Mineral Rights .................. MIN
Trust – Impress/Declare/Create ............... TRST
Trust – Reformation ................................. REFT
Uniform Foreign Country Money Judgments ......RFCJ
Unlawful Detainer ....................................... UD
Vehicle Confiscation ................................. VEH
Voting Rights – Restoration .................... VOTE
Will Construction .................................... CNST
Will Contested ......................................... WILL
Writs
    Certiorari ................................................. WC
    Habeas Corpus ...................................... WHC
    Mandamus ............................................... WM
    Prohibition ............................................... WP
    Quo Warranto ..................................... WQW
Wrongful Death ........................................... WD

RE: VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF ROCKBRIDGE

W.C. ENGLISH, INC.

         Plaintiff,

v.

                                          LAW NO. _____

RUMMEL, KLEPPER & KAHL, LLP
    Serve:
        CT Corporation System
        4701 Cox Rd., Suite 285
        Glen Allen, VA 23060

and

CDM SMITH, INC.
    Serve:
        CT Corporation System
        4701 Cox Rd., Suite 301
        Glen Allen, VA 23060-6802

                  Defendants.

## COMPLAINT

    NOW COMES Plaintiff, W.C. ENGLISH, INC. ("ENGLISH"), by counsel, and for its Complaint against Defendants RUMMEL, KLEPPER & KAHL, LLP ("RK&K"), and CDM SMITH, INC. ("CDM SMITH") states as follows, to the best of ENGLISH's information, knowledge, and belief:

    1.    Plaintiff, ENGLISH is a Virginia corporation, with its principal place of business in Lynchburg, VA, and is duly qualified to do business in the Commonwealth of Virginia.

    2.    Defendant, RK&K, is a foreign Limited Liability Partnership, with its principal place of business at 81 Mosher Street, Baltimore, MD 21217. At all times relevant to this matter, RK&K was qualified to do business in Virginia.

1

3.     RK&K transacts business in Virginia including through the allegations contained in this Complaint and at least four of its offices located in Richmond, Fairfax, Virginia Beach and Newport News.

4.     Upon information and belief, RK&K, as a limited liability partnership has individual partners or directors who reside in the Commonwealth of Virginia.

5.     Defendant, CDM SMITH, is a Massachusetts corporation, with its principal place of business at 75 State Street, Suite 701, Boston, MA 02109.  At all times relevant to this matter, CDM SMITH was qualified to do business in Virginia.

6.     CDM SMITH transacts business in Virginia including through the allegations contained in this Complaint and at least four of its offices located in Richmond, Fairfax, Virginia Beach and Newport News.

7.     Upon information and belief, CDM SMITH is the successor by merger, effective on or about February 2011, between the former Camp Dresser & McKee, Inc. and Wilbur Smith Associates Inc., and assumed all existing contractual obligations and liabilities of Wilbur Smith, Associates.  Hereinafter, the name CDM SMITH shall be used to refer to obligations, responsibilities, and actions of both Wilbur Smith, Associates prior to the merger, and CDM SMITH following the merger, except where the entity name Wilbur Smith, Associates is used for clarity.

8.     This action arises out of a contract between the Virginia Department of Transportation ("VDOT") and ENGLISH for construction improvements to Interstate I-81 in Rockbridge County, and services rendered by the Defendants related thereto.

9.     This Court has subject matter jurisdiction over all matters raised herein and personal jurisdiction over all parties hereto.

10.     Venue is proper in this Court pursuant to Virginia Code §8.01-262.

2

11.    All conditions precedent, if any, to the bringing and maintenance of this action have occurred, have been waived, have been met, and/or have been satisfied.

## Factual Background

12.    This action arises from the following contract and project ("the Contract" or "the Project") to construct improvements to Interstate 81 ("I-81") in Rockbridge County:

| | |
|---|---|
| VDOT Contract ID. No.: | C00084363DB10 |
| VDOT Project No.: | 0081-081-708, P101, R201, C501, B601, B602, B603 |
| | I-81 Corridor Safety and Operational Improvements, |
| | Staunton Truck Climbing Lane Project, MP 195-202 |
| | Northbound; Rockbridge County, Virginia |

13.    VDOT awarded the Contract to ENGLISH to construct the Project on or about February 27, 2009. The scope of work for the Contract included construction of a "Truck Climbing Lane," or an additional lane of roadway, associated improvements to the shoulders and median, and replacement of two bridges on I-81 Northbound Lanes and one bridge over I-81 Northbound and Southbound Lanes near Lexington ("the Work").

14.    The Contract was a "design-build" contract in which ENGLISH was responsible to VDOT for performing the final design and construction of the Work, and also to perform Quality Assurance ("QA") and Construction Quality Control Inspection ("QC") tasks that are typically performed by VDOT, or its consultants on other Projects.

15.    The Contract specified that ENGLISH was to achieve "Substantial Completion" of the Project by September 4, 2012, at which point the Project would be available for its intended use, except for minor "punch list" work.

16.    The Contract also specified a "Final Completion Date" of October 30, 2012, on which date all of the Contract work was to be completed.

17.    The Contract specified the following financial penalties for late achievement of

3

Substantial Completion and Final Completion:

    a.  Liquidated Damages for late achievement of Substantial Completion charged to ENGLISH at the rate of $3,000.00 per day;

    b.  Liquidated Damages for late achievement of Final Completion charged to ENGLISH at the rate of $2,000.00 per day; and

    c.  Disincentives of $5,000.00 per day charged to ENGLISH for late achievement of Substantial Completion.

18.    ENGLISH entered into a contract with AECOM USA, Inc., for it to perform the design tasks for the Project, and to act as the Designer of Record ("DOR") for the Project. AECOM prepared design documents approved for construction of the Project ("the Design"), which were reviewed and approved by VDOT.

19.    Under the terms of the VDOT Contract, QA and QC functions must be performed by companies that were licensed to perform professional engineering work in the Commonwealth of Virginia and that were prequalified to perform such work by VDOT. The individuals designated by such engineering companies as the QA and QC managers also had to be approved by VDOT.

### The QA Subcontract.

20.    On or about October 6, 2009, ENGLISH entered into a subcontract with RK&K ("the QA Subcontract") to perform the QA tasks required by the VDOT Contract. A true and accurate copy of the QA Subcontract is attached as Exhibit A.

21.    RK&K's duties under the QA Subcontract, including those of the Quality Assurance Manager ("QA Manager"), were further elaborated in a Construction Quality

Assurance Plan ("QA Plan") prepared by RK&K and approved by ENGLISH and VDOT.

22.     The QA Plan complied with the requirements of VDOT's August 2007 document entitled "Minimum Quality Control & Quality Assurance Requirements for Design Build and Public-Private Transportation Act Projects," ("VDOT QA & QC Requirements").

23.     The VDOT QA & QC Requirements document was incorporated into ENGLISH's Design-Build Contract documents with VDOT, and was therefore a Contract Document under that Contract, and also incorporated into the QA Subcontract.

24.     Originally, RK&K appointed Mr. Lee Yowell as QA Manager for the Project.  On or about February 5, 2010, RK&K, appointed Mr. Richard Clarke as the QA Manager for the Project, replacing Lee Yowell, and this substitution was approved by VDOT.  On or about August 10, 2012, Richard Clarke resigned his position with RK&K and Lee Yowell was reappointed and approved by VDOT.

### The QC Subcontract

25.     On or about March 26, 2009, ENGLISH entered into a subcontract with Wilbur Smith Associates ("the QC Subcontract") for it, and ultimately CDM SMITH following the merger discussed in paragraph 4 above, to perform the Construction QC Inspection tasks required by the VDOT Contract.  A true and accurate copy of the QC Subcontract is attached as Exhibit B.

26.     CDM SMITH's duties under the QC Subcontract, including those of the Quality Control Manager ("QC Manager"), were further elaborated in a Construction Quality Control Plan ("QC Plan") prepared by CDM SMITH and approved by ENGLISH and VDOT.

27.     The QC Plan complied with the requirements of VDOT's August 2007 document

5

entitled "Minimum Quality Control & Quality Assurance Requirements for Design Build and Public-Private Transportation Act Projects" ("VDOT QA & QC Requirements").

28.     The VDOT QA & QC Requirements document was incorporated into ENGLISH's Design-Build Contract documents with VDOT, and was therefore a Contract Document under that Contract, and also incorporated into the QC Subcontract.

29.     CDM SMITH appointed Mr. Terry Oliver on September 15, 2010, as the QC Manager for the Project and he was approved by VDOT.  Mr. Khairy Wahba served as an inspector working under Terry Oliver with the principal duty of being the Bridge Inspector.

### Bridge B603

30.     Part of the Design-Build Contract required ENGLISH to design and construct a replacement bridge, referred to as Bridge "B603" for carrying the existing and newly constructed lanes of northbound I-81 over existing Route 710, Sterrett Road, in Rockbridge County.

31.     The Design required the construction of B603 to be done as follows:

   a.  Stage I Demolition - partial demolition of existing bridge parapet and bridge shoulder lane;

   b.  Stage I Construction - construction of two outside lanes of the new bridge to maintain two travel lanes available for traffic during construction;

   c.  Stage II Demolition - once I-81 Northbound traffic is relocated to Stage I bridge structure, demolition of remainder of existing bridge over Route 710;

   d.  Stage II Construction - construction of new bridge structure consisting of three lanes;

   e.  Closure Pour - pour concrete to connect the 6'8" "gap" between the Stage I and Stage II bridge decks and create a single continuous-width structure consisting of five lanes labeled as Inside Shoulder, Passing Lane, Travel Lane, Truck Climbing Lane, and Outside Shoulder.

32.     The Design required that the deck concrete depth be no less than 8.5 inches and it could be up to 9.5 inches thick.

33.    The Design required two mats of reinforcing steel bars to be properly positioned in accordance with the Design and approved submittals prior to pouring the concrete deck. The bottom layer of rebar had to be 1.5 inches from the bottom of the finished concrete deck and the top layer of rebar had to be 2.75 inches beneath the concrete road surface, leaving a minimum space between the two mats of 2.5 inches.

34.    At the right outside edge of the Stage I deck, the Design also required the construction of a cast-in-place concrete parapet that was tied into and connected to the rebar mats from the Stage I bridge.

35.    The configuration of, and spacing between the reinforcing steel bar layers is critical to the structural strength and service life of the bridge deck and thus a critical item of inspection for the QA and QC Plan purposes.

36.    RK&K, through the actions or omissions of its QA Manager, materially failed to correctly perform its QA duties for the Project, including by failing to properly inspect the Stage 1 Bridge Deck rebar placement and deck screed grade; by failing to comply with the requirements of the QA Manager for field changes; by failing to confirm that all work is being performed in accordance with all construction documents and contract documents; and by failing to identify, and instead, approving non-compliant conditions permitting the Stage 1 bridge deck to be poured in a manner that deviated from the Design and rejected by VDOT.

37.    CDM Smith, through the actions or omissions of its QC Manager, materially failed to correctly perform its QC duties for the Project, including by failing to properly inspect the Stage 1 Bridge Deck rebar placement and deck screed grade; by failing to comply with the requirements of the QC Manager for field changes; by failing to confirm that all work is being performed in accordance with all construction documents and contract documents; and by failing to identify, and instead, approving non-compliant conditions permitting the Stage 1 bridge deck

7

to be poured in a manner that deviated from the Design and rejected by VDOT.

38.     Specifically, the deviations from the design which the QA Manager and QC Manager permitted, approved, authorized and/or directed included the reduction of spacing between the two rebar mats to less than 2.5 inches, and the placement of additional concrete on the deck resulting in some areas of deck thickness exceeding 9.5 inches.  The result was the B603 Stage 1 bridge deck was constructed with insufficient spacing between the rebar mats and excessive concrete cover over the top rebar layer, resulting in VDOT's rejection of the B603 Stage 1 bridge deck following its construction.

39.     In April, 2012, Mr. Clarke and Mr. Wahba jointly inspected the placement of the reinforcing steel in both the bottom and top mats and specifically discussed with ENGLISH and approved changing the bar spacing between the mats to increase the concrete cover over the top mat.  In fact, Mr. Clarke and Mr. Wahba would not approve the original spacing of the rebar mats, resulting in the replacement of approximately 1/3 of the bridge deck rebar supports between the mats to conform with their direction to reduce the spacing between the rebar mats by ¾ of an inch.  ENGLISH complied with the QA Manager and QC inspectors' requirements for approval of the rebar placement.

40.     On April 24, 2012, ENGLISH poured the concrete for the Stage 1 B603 bridge deck only after the QA Manager and QC Inspector jointly made their inspection and approved the reinforcing steel placement and final dry run screed adjustments, which resulted in excessive concrete cover.

41.     After additional cure time and placement of the parapet and approach slabs, the Stage 1 B603 Bridge was completed on or about July 15, 2012.

42.     VDOT notified ENGLISH on or about August 2, 2012, that the rebar placement

8

did not conform to the approved bridge deck design, and required engineering analysis to demonstrate its structural suitability to continue to allow traffic on the Stage I deck.

43.     On August 21, 2012, during a progress meeting, VDOT noted that the shorter bar supports between the mats of steel used as approved by Mr. Clarke and Mr. Wahba, were incorrect and not in accordance with the plans or approved by VDOT.  While VDOT allowed traffic on the bridge as built, it noted that remedial action would be required on the Stage I B603 deck.

44.     VDOT directed ENGLISH to submit a plan to correct the deficiencies and provide more detailed calculations from the DoR.

45.     In an effort to convince VDOT that the Stage I B603 deck and parapet was suitable to remain permanently in place, ENGLISH, the DoR and their consultants analyzed and presented to VDOT engineering calculations and data concerning the sufficiency of the deck as built.

46.     On March 13, 2013, VDOT issued a Notice of Non-Conforming Work with regard to the placement of reinforcing steel on the Stage 1 B603 deck.

47.     On April 1, 2013, ENGLISH received a second Notice of Non-Conforming Work, and a third Notice of Non-Conforming Work on April 5, 2013.

48.     Despite ENGLISH making numerous submissions, commissioning independent reports, taking cores, testing the materials in place, and attending multiple meetings with VDOT personnel, VDOT refused to accept the Stage 1 B603 deck and parapet.

49.     On August 16, 2013, VDOT gave ENGLISH a final directive to remove and replace the deck.

50.     ENGLISH complied with this directive and started the demolition for replacement on or about August 28, 2013.

9

51.     On April 8 and August 27, 2013, ENGLISH placed CDM Smith on notice of a potential claim relating to the Quality Control services CDM Smith provided for the Project.

52.     On April 8 and August 27, 2013, ENGLISH placed RK&K on notice of a potential claim relating to the Quality Assurance services RK&K provided for the Project.

53.     Following demolition and reconstruction of B603 deck and parapet wall, ENGLISH completed the B603 bridge in its final configuration on December 21, 2013.

54.     Because the removal of the B603 Stage I deck, after construction of the Stage II deck, was not part of the original design or construction sequence, ENGLISH incurred damages for additional engineering design, structural and geotechnical analyses costs, as well as the additional costs for demolition and reconstruction of the bridge deck and parapet.

55.     As a direct result of the requirement to remove and reconstruct the B603 Stage I deck, ENGLISH was late in achieving both Substantial Completion and Final Completion dates on the Project, incurring liquidated damages and disincentives for failure to achieve Substantial Completion as required, and liquidated damages for failure to achieve Final Completion as required in the Contract.

56.     On February 4, 2016, VDOT executed Work Order 3 with ENGLISH on the Project, resolving all other outstanding issues between VDOT and ENGLISH by increasing the contract price and reducing previous assessments of liquidated damages and disincentives, but further specifying that "No adjustment in the contract price or time of performance shall be made for the B603 Stage 1 Demolition and Reconstruction issue."

57.     ENGLISH incurred the following damages as a direct and proximate result of the breaches and failures of RK&K and CDM Smith to perform their QA and QC duties regarding the B603 Stage I deck:

| | | |
|---|---|---:|
| a. | Engineering analysis: | $47,942 |
| b. | Re-design services: | $109,004 |
| c. | Construction costs: | $904,473 |
| d. | Liquidated damages and disincentives: | $1,536,000 |
| e. | Additional QA services: | $60,896 |
| f. | Additional QC services: | $85,722 |
| g. | Extended job site overhead: | $247,863 |
| h. | Extended home office overhead: | $282,331 |
| i. | Legal costs: | $38,592 |
| | TOTAL: | $3,312,823 |

## COUNT 1
### (RK&K Breach of QA Subcontract)

58.  ENGLISH realleges each of the foregoing paragraphs and incorporates the same by reference as if set forth fully herein.

59.  Defendant, RK&K, through its employees, servants, and agents, acting within their scope of employment, materially breached its obligations under the QA Subcontract by the allegations in this Complaint, including without limitation the allegations in the Complaint and the following:

    a) Erroneously and negligently inspecting and approving the incorrect spacing of the rebar mats and deck thickness resulting in rejection of the bridge by VDOT;

    b) Failing to comply with the requirements of the QA Plan for the Project; and

    c) Breaching its standard of care owed to ENGLISH in the performance of its professional duties as a certified Quality Assurance Manager on the Project.

11

60.     Pursuant to the QA Subcontract, Paragraph 24 of the Terms and Conditions, RK&K caused a delay to the completion of the Project constituting a default of its obligations under the QA Subcontract.

61.     RK&K is entitled to a credit for its unpaid subcontract balance of $148,805 to the damages incurred by ENGLISH because of RK&K's material breach of its subcontract and indemnity obligations to ENGLISH.

62.     As a direct and proximate result of RK&K's breaches of the QA Subcontract, ENGLISH has incurred damages, costs and penalties in excess of $3,290,798, after accounting for a credit of $148,805 to RK&K for its unpaid subcontract balance.  RK&K is liable to ENGLISH for such damages.

63.     In addition, ENGLISH is entitled to the award of its attorneys' fees and costs incurred to date and in this action as provided in Paragraph 24 of the RK&K subcontract agreement.

## COUNT 2
### (RK&K Indemnity Under the QA Subcontract)

64.     ENGLISH realleges each of the foregoing paragraphs and incorporates the same by reference as if set forth fully herein.

65.     Defendant, RK&K, through its employees, servants, and agents, acting within their scope of employment, materially breached its obligations under the QA as previously alleged.

66.     Pursuant to the QA Subcontract, Paragraph 11 of the Terms and Conditions, RK&K is obligated to indemnify ENGLISH for all damages and costs incurred as a result of RK&K's negligent performance of its work, thereof, including all attorneys' fees incurred as a result of such breaches.

67.     As a direct and proximate result of RK&K's breaches of the QA Subcontract, ENGLISH has incurred damages, costs and penalties in excess of $3,290,798, plus attorneys' fees and costs.  RK&K is liable to ENGLISH for such damages.

## COUNT 3
(CDM SMITH Breach of QC Subcontract)

68.     ENGLISH realleges each of the foregoing paragraphs and incorporates the same by reference as if set forth fully herein.

69.     Defendant, CDM SMITH, through its employees, servants, and agents, acting within their scope of employment, materially breached its obligations under the QC Subcontract by the allegations in this Complaint, including without limitation the allegations in the Complaint and the following:

a) Erroneously and negligently inspecting and approving the incorrect spacing of the rebar mats and deck thickness resulting in rejection of the bridge by VDOT;

b) Failing to comply with the requirements of the QC Plan for the Project; and

c) Breaching its standard of care owed to ENGLISH in the performance of its professional duties as a certified Quality Control Manager on the Project.

70.     Pursuant to the QC Subcontract, Paragraph 24 of the Terms and Conditions, CDM Smith caused a delay to the completion of the Project constituting a default of its obligations under the QA Subcontract.

71.     Due to such default, ENGLISH is entitled under paragraph 24 (iv) of the QA Subcontract to recover all such damages, costs, and penalties, including reasonable attorneys' fees incurred as a result of such default.

72.     As a direct and proximate result of CDM SMITH's breaches of the QC Subcontract, ENGLISH has incurred damages, costs and penalties in excess of $3,109,943, after

accounting for a credit of $329,660 to CDM Smith for its unpaid subcontract balance, plus

attorneys' fees and costs.  CDM SMITH is liable to ENGLISH for such damages.

73.    In addition, ENGLISH is entitled to the award of its attorneys' fees and costs

incurred to date and in this action as provided in Paragraph 24 of the CDM SMITH subcontract

agreement.

## COUNT 4
### (Indemnity Under the QC Subcontract)

74.    Plaintiff realleges each of the foregoing paragraphs and incorporates the same by

reference as if set forth fully herein.

75.    Defendant, CDM SMITH, through its employees, servants, and agents, acting

within their scope of employment, breached its obligations under the QC Subcontract as

previously alleged.

76.    As a direct and proximate result of CDM SMITH's breaches of the QC

Subcontract, ENGLISH has incurred damages in excess of $3,109,943.  CDM SMITH is liable to

ENGLISH for such damages.

77.    Pursuant to the QC Subcontract, Paragraph 11 of the Terms and Conditions, CDM

SMITH is obligated to indemnify ENGLISH for all damages and costs incurred as a result

thereof, including all attorneys' fees incurred as a result of such breaches.

WHEREFORE, ENGLISH, by counsel, demands judgment as follows:

a)  Against Defendant, RK&K, in the amount and manner set forth above, specifically including the principal amount in excess of $3,290,798, as demonstrated by proof of damages at trial, plus interest thereon at the rate of 1½% per month, plus ENGLISH's attorneys' fees and expenses;

b)  Against Defendant, CDM SMITH, in the amount and manner set forth above, specifically including the principal amount in excess of $3,109,943, as demonstrated by proof of damages at trial, plus interest thereon at the rate of 1½% per month, plus ENGLISH's attorneys' fees and expenses;

c)  That ENGLISH be awarded its costs and expenses incurred herein, including reasonable attorneys' fees as provided by contract; and

d)  For such other and further relief as this Court deems just and proper.

W.C. ENGLISH, INC.

By: _____
Of Counsel

Of Counsel:
Patrick A. Genzler, (VSB #17778)
James R. Harvey, III (VSB #40726)
VANDEVENTER BLACK, LLP
101 W. Main Street, Suite 500
Norfolk, VA 23510
Telephone: 757-446-8600
Facsimile: 757-446-8670
PGenzler@VanBlackLaw.com
JHarvey@VanBlackLaw.com

4814-5866-0672. v. 1

15

Contractor
Subcontractor
Project Manager(s)
Job Superintendent
Accounts Payable
File

RECEIVED

2009 OCT 11  PM 12: 25

**For Home Office Use Only:**
Date Contract Received: __10-11-09__
Date Bonds Received: __N/A  Proof of Errors + Omissions__
Date Insurance Certificate Received: __10-11-09__

**SUBCONTRACT NO.** _____ **2270-012**

October 6, 2009

"Contractor": W. C. English, Incorporated
615 Church Street (24504)
P. O. Box P-7000
Lynchburg, VA 24505
Telephone: (434) 845-0301      Fax: (434) 845-0306

Date: ~~March 26, 2009~~      WCE Job No. ___2270___

"Project":      Project No.: 0081-081-708, P101, R201,
C501, B601,B602,B603
FHWA NO: NCII-081-2(271)
Contract ID No. C00084363DB10
I-81 Truck Climbing Lanes MP 195-202
Rockbridge County, Virginia

"Subcontractor": RUMMEL, KLEPPER & KAHL (RK&K)
(Vendor #45064)      801 East Main Street, Suite 1000
Richmond, VA 23219-3668

"Owner":      Virginia Department of Transportation
Richmond, Virginia
**Contract with Owner dated: February 20, 2009**

*Attention: Mr. Lee Yowell, PE, Director of Construction Srvcs-VA*

TEL: (804) 782-1903      FAX: (804) 782-2142

Website: www.rkkengineers.com   email: lyowell@rkk.com

a. Show Subcontract No. __2270-012__ , Job Name and Job. No. __2270__ and Cost Code **SC-061200** on all shipping papers, invoices and correspondence.
b. Submit shop drawings/material submittals in __8__ copies for approval within __60__ days prior to work beginning.
c. Performance and Payment Bond: __NO__ Required   In lieu of bond, Proof of Errors and Omissions Insurance Required
d. Retained Percentage __0__
e. Insurance Certificate required.   30 DAY NOTICE OF CANCELLATION REQUIRED. W. C. ENLGISH, Incorporated MUST BE NAMED AS ADDITIONAL INSURED ON THE GENERAL LIABILITY POLICY. SEE  PAGE 18 FOR LIMITS REQUIRED.

Contractor and Subcontractor, with offices at the addresses shown above, agree for themselves, their successors and assigns as follows:

**Minority/SWAM Certifications –**
**Must** be completed by ALL subcontractors to include vendors:

Are you a certified subcontractor or vendor:      _____Yes    _X_ No

If yes, please provide the following information: Minority _____      SWAM _____

Name of organization/agency that approved your certification
(i.e. VDOT, NCDOT, City of Charlotte, etc.) _____

Certification Number: _____      Expiration Date: _____

Contact Person: _____      Telephone No.: _____

_Contractor Initials_       _Subcontractor Initials_

EXHIBIT A

Contractor
Subcontractor
Project Manager(s)
Job Superintendent
Accounts Payable
File

| For Home Office Use Only: |
| :--- |
| Date Contract Received: _____ |
| Date Bonds Received: _____ |
| Date Insurance Certificate Received: _____ |

**SUBCONTRACT NO.** _____ 2270-012 _____

## SCHEDULE A ( "Work" )

THIS IS OUR ACCEPTANCE of your written proposal (copy attached) to provide **Quality Assurance Services** on the subject project in strict accordance with VDOT plans, specifications and special provisions for the lump sum price of....................................... **$3,305,000.00**

*\*RK&K price includes $200,000.00 in DBE participation using Quinn Consulting Services.*

**Notes:**
1. **Bond is not required,** in lieu of bond Proof of Errors and Omissions Insurance is required.
2. Furnish paperwork per attached "Items Required from Subcontractor" list **as soon as possible.**
3. The attached "Required Contract Provisions Federal-Aid Construction Contracts" is hereby made apart of this Subcontract Agreement **(please do not remove).**
4. Predetermined Minimum Wages apply to this project and copy is enclosed **for your use (please do not remove)** .
5. Please furnish home telephone number for emergency use _804.360.9347_ .
6. **RK&K** to begin prescribed work within 2 week notice of verbal or written notice ~~or be held responsible for any cost incurred by English as a result of such delays beyond the 2 week notice and reimburse English for this cost from monies due RK&K.~~
7. Prices are firm for the duration of the project.
8. **Notice of Termination**
   If the Design-Builder ("Contractor") is served with a "Notice of Termination" from the Department, the Subcontractor shall stop work on the date of and to the extent specified in the Notice of Termination. ~~The Contractor shall communicate, to the Subcontractor, immediately upon receipt thereof, any~~ Notice of Termination issued by the Department to all affected Subcontractors. The Subcontractor shall include this provision in all of its subcontracts at all tiers.
9. Subcontractors price includes $200,000.00 in DBE participation using Quinn Consulting Services. Subcontractor acknowledges that Prime Contractor will receive DBE contract goal credit for payment made under this subcontract agreement provided Quinn performs a Commercially Useful Function ("CUF"), as defined in Section 110.04 of the Prime Contract. Subcontractor agrees that this subcontract may be terminated if it is determined that Quinn is not performing a CUF. However, Subcontractor will be responsible for providing $200,000.00 in DBE participation.
10. RK&K's proposal is hereby made a part of this subcontract agreement.

**Price:  $3,305,000.00**

W. C. English, Incorporated will not allow vendors/subcontractors on the jobsite until all required and specified paperwork, i.e. Certificates of Insurance, Bonds have been received in our corporate office @ PO Box P-7000, Lynchburg, VA 24505.

_Contractor Initials_                    _Subcontractor Initials_



**Rummel,
Klepper
& Kahl, LLP**

*William K. Hellmann
Emeritus*

*David W. Wallace
Robert J. Halbert
Stephen G. Zentz
J. Michael Potts
Thomas E. Mohle
James A. Zito*

*Charles M. Easter, Jr.
Joseph A. Ranseromski, Jr
Michael L. Krupsaw
Lars E. Hill
J. Tommy Peacock, Jr.
Michael W. Myers
Martin C. Rodgers
Kenneth A. Goon
Richard J. Adams, Jr
John A. d'Epagnier
Barbara J. Henge
Christopher F. Wright
Owen I. Peety
Nancy R. Bergeron
Stuart A. Montgomery
David G. Vautrey
Henry J. Bankard, Jr.
James F. Ridenour, Jr.
Robert J. Andryzzal
Raymond M. Harbison, Jr.
B. Keith Shuster
Karen B. Kahl
Seyed A. Sandai
John C. Moore
Sonya Y. Brown
Eric M. Klein
Todd E. Rousenberger
Donald P. Lauseu
Thomas M. Heil
Robert D. Ostermiller
Barry L. Brandt
Malachi M. Mills*

*801 East Main Street
Suite 1000
Richmond, Virginia
23219-3666
Ph. 804-782-1903
Fax 804-782-2142
www.rkkengineers.com*

November 17, 2008

Mr. Bernie Davis
Project Manager
English Construction Company, Inc.
615 Church Street
Lynchburg, VA 24504

Re: I-81 Truck Climbing Lanes Design- Build Project
    MP 195 to MP 202
    Quality Assurance Price Proposal

Dear Bernie:

RK&K is pleased to submit the following price to provide Quality Assurance Services for the above referenced project. RK&K's price is $3,305,000. Our price is based on RK&K's technical proposal submitted to English on September 30, 2008 (see attached) with the following assumptions:

1) English to sub-contract QA Services to RK&K with a lump sum contract. Thus, should English finish early, RK&K still receives their full lump sum amount.
2) RK&K's lump sum amount covers QA services beginning February 25, 2009 through October 31, 2012.
3) English to provide adequate office space, fire proof file cabinets, printer, copier, fax, scanner and high speed internet service.
4) At no fault of RK&K's, if project goes beyond 10/31/12 with no time extension from VDOT, English will compensate RK&K for labor costs and overhead (no profit) on an hourly basis as well as direct expenses (trucks, computers, and cell phones).
5) At no fault of RK&K's, if project goes beyond 10/31/12 with a compensated time extension from VDOT, English will compensate RK&K for labor costs and overhead (with profit) on an hourly basis as well as direct expenses (trucks, computers, and cell phones).

Our proposed schedule of payments is broken down as follows:

| | | |
|---|---|---|
| First Month of the project: | $95,448 per month | = $95,448 |
| Year 2010 (12 months): | $108,371 per month | = $1,300,452 |
| Year 2011 (12 months): | $95,455 per month | = $1,145,460 |
| Year 2012 (8 months): | $95,455 per month | = $763,640 |
| | Total | = $3,305,000 |

RK&K's price covers $200,000 in DBE Participation. Quinn Consulting Services will provide these services. They are a certified Virginia DBE to provide Constructing Engineering Inspection Services. Their VDOT Vendor # is Q 032.

We look forward to working with English on this very important project. Please advise should you need additional information.

Sincerely,

Rummel, Klepper & Kahl, LLP

Leo Yowell, P.E.
Director of Construction Services - VA

cc: Mike Potter, P.E., CCM
attachments (1)

# ITEMS REQUIRED FROM SUBCONTRACTOR

1. ~~Form C-31 (Form Enclosed)~~ *mp*
2. ~~Payment and Performance Bonds~~ *mp*
3. ~~Current Form C-64~~ *mp*
4. ~~Current E.E.O. Meeting Minutes~~ *mp*
5. ~~E.E.O. Policy~~ *mp*
6. ~~Letter designating E.E.O. Officer~~ *mp*

Unless Required by VDOT *w.n.al.*

7. Certificate of Insurance with **W. C. English, Incorporated must be named additional insured as well as a 30-Day Notice of Cancellation**
8. Source of Materials, if applicable (**ALL Source of Materials must be faxed or emailed to slloyd@englishconst.com**)

**The items above need to be returned as soon as possible—with executed subcontract.**

**In addition to the above, the following forms are also required:**

1. ~~Form C-57~~  --   ~~Submit each month for the first 3 months that you work and every July thereafter until your work is completed.~~ *mp*

2. Form C-63  --   If you have DBE subcontractors working for you on this project, you must submit a C-63 every month you have DBE dollars to report.  **PLEASE do not submit C-63 if you do NOT have DBE activity to report.**

3. ~~Form C-64~~  --   ~~Submit as soon as possible (as requested above) and every 6 months thereafter until your work is finished.~~ *mp*

4. ~~Submit weekly three (3) copies of Certified Payrolls for each week worked.~~ *mp*



## STANDARD TERMS AND CONDITIONS TO PROPOSAL FOR
## CONSULTING ENGINEERING SERVICES
## BETWEEN RUMMEL, KLEPPER & KAHL, LLP AND CONTRACTOR

1.    These Terms and Conditions apply to and are a part of Rummel, Klepper & Kahl, LLP§s (RK&K) Proposal to Contractor dated November 17, 2008.  In the event of conflict between these Terms and Conditions and the terms established in the body of the Proposal, the latter shall govern.

2.    RK&K will timely perform its professional services in accordance with the prevailing standard of professional care for similar services in relation to projects of similar scope, size and complexity.

3.    Contractor agrees to pay all invoices within 10 days of receipt of payment from Owner.  After thirty days, interest shall accrue at the rate of one percent per month (simple).  After forty-five days from receipt, RK&K may suspend services or terminate for default.  If, after a suspension for non-payment, RK&K is paid and agrees to resume services, Contractor shall compensate RK&K for all start-up and remobilization costs associated therewith.

4.    RK&K§s services are performed solely and exclusively for Contractor.  No third-party beneficiaries are or will be recognized.

5.    RK&K assumes no responsibility for construction means, methods, sequences, safety precautions or safety programs in connection with the construction of the Project.  These responsibilities are reposed exclusively in the Construction Manager and/or General Contractor charged with executing the worked described in the Construction Documents.

6.    Contractor shall immediately bring to the attention of RK&K any errors or omissions observed in the services or work product of RK&K.

7.    Performance of QA phase services shall not be construed to relieve the Contractor or Construction Manager from responsibility to perform the construction work in accordance with the Construction Documents and accepted industry standards.  RK&K is not responsible for the Contractor§s failure to perform the construction work in accordance with the Construction Documents.

8.      To the extent that any losses are fully covered by insurance both Contractor and RK&K waive such claims against each other.

9.      To the extent that a claim is covered by insurance no set offs are permitted except with respect to claims for which RK&K has been adjudicated liable.

10.     Unless otherwise expressly required by the terms of the Proposal, RK&K shall have no liability or responsibility for the presence, handling or disposal of hazardous or toxic materials on the site.

11.     If Contractor directs RK&K in writing to perform services that are beyond the scope of the Proposal without first negotiating a lump fee, all such additional services shall be performed at 2.5 times direct personnel costs plus expenses.

12.     RK&K retains ownership of, and all intellectual property rights in, its instruments of service. Contractor shall be entitled to use this work product for this Project only and provided that RK&K is paid in accordance with the Proposal and these Terms and Conditions.

13.     Contractor and RK&K agree to look exclusively to each other in the event or a claim arising out of the Proposal. Neither party will look to or make a claim against the principals or employees of the other.

14.     Contractor and RK&K agree to waive all claims against the other for consequential damages arising out of, or relating to, the Proposal or the services. Consequential damages include, without limitation, loss of profits, loss of use, loss of opportunities and any other expectation losses.

15.     The Proposal and these Terms and Conditions, and all services performed in connection therewith, shall be governed by the substantive law of the State in which the Project is situated.

16.     The Proposal and these Terms and Conditions are an integrated document. If any one or more of these Terms and Conditions is held to be invalid, the balance shall survive.

*accordance with the prevailing standard of care*



1.      **Work.**  Subcontractor shall perform and furnish all labor, supervision, services, materials, equipment, tools, transportation, storage and all other things necessary to prosecute and complete the work identified and described in Schedule A attached hereto (the "Work"), being a portion of the Work required of Contractor under the Contract between Owner and Contractor.  The Work shall be performed by Subcontractor in a good-and-workmanlike-manner strictly in accordance with the Contract Documents, consisting of the Contract and the plans, specifications (including, but not limited to, general, special and supplemental conditions), addenda and other documents identified or attached hereto, and all subsequently and duly issued modifications thereto.  *Facilities and equipment to be provided by Contractor are specified in the cover letter to RK&K's proposal, dated November 17, 2008. (Reference No. 3 in the letter.)*

The Contract Documents are available for examination by Subcontractor at all reasonable times at the office of Contractor. Subcontractor represents and agrees that it has carefully examined and understands the Contract Documents relevant to the Work; has adequately investigated the nature and conditions of the Project site and locality; has familiarized itself with conditions affecting the difficulty of the Work; and has entered into this Subcontract based on its own examination, investigation and evaluation and not in reliance upon any opinions or representations of Contractor.

With respect to the Work, Subcontractor agrees to be bound to Contractor by the terms and conditions of the Contract Documents and this Subcontract and hereby assumes toward Contractor all of the duties, obligations and responsibilities that Contractor has by the Contract Documents assumed toward the Owner.

2.      **Price.**  Contractor shall pay to Subcontractor for the satisfactory performance and completion of the Work and all the duties, obligations and responsibilities of Subcontractor under this Subcontract, the sum set forth above as the Price, subject to additions and deductions as herein provided.  To the extent that the Work is to be performed on a unit price basis, the Price shall be computed in accordance with the unit prices set forth in Schedule A based on actual quantities determined in accordance with the Contract Documents and this Subcontract.  The price and all unit prices shown in Schedule A , shall be deemed to include all costs of Subcontractor's performance of the Work, including but not limited to, the costs of labor, supervision, services, materials, equipment, tools, transportation, storage, insurance and taxes, and allowance for overhead and profit.

3.      **Progress Payments.**  On or before each Monthly Billing Date, Subcontractor shall submit to Contractor, in such form and supported by such data as Contractor may require, a progress payment application showing the value of the Work installed to the satisfaction of Contractor and Owner ("Completed Work"), plus the value of the material and equipment for incorporation in the Work suitably stored (to the satisfaction of Contractor and Owner) at the project site or other approved location ("Stored Work") if, and only if, the Contract Documents provide for payments to Contractor on that basis, as of such date.

Any standard form required by Owner or the Contract Documents to be submitted prior to the issuance of Contractor's Monthly Estimate, including, but not limited to, forms WH-347 (Payroll), C-63, C63A (DBE/WBE), C57 or PR139J (EEO), shall be submitted in a prompt and timely manner so as not to delay payment by owner of Contractor's Monthly Estimate. Time is of the essence. Should Subcontractor delay payment by Owner of Contractor's Monthly Estimate, for whatever reason, Subcontractor shall be liable to the Contractor at the rate of 1½% per month of the entire monthly estimate less payment due Subcontractor, which sum shall be deducted from Subcontractor's payment for that estimate.

Within 7 days after receiving a progress payment from Owner under the Contract, Contractor shall make a progress payment to Subcontractor equal to the value of the Completed Work as of the corresponding Monthly Billing Date, to the extent approved by Contractor and allowed and paid by Owner on account of the Work, and after deducting (a) all previous payments, (b) current retainage (meaning a reserve equal to the Retained Percentage times the allowed value of Completed Work and Stored Work, plus any extraordinary reserve provided for herein) and (c) all charges or backcharges for services, materials equipment and other items furnished or otherwise chargeable by Contractor to Subcontractor. It is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent, upon the Contractor receiving payment (including retainage) from Owner , *except as set forth in the cover letter to RK&K's proposal, dated November 17, 2008 . (Reference No. 4 in the letter.)*

Contractor reserves the right to advance the date of payment (including final payment) under this Subcontract if, in its sole judgement, it becomes desirable to do so.

-2-

_____                                            _____
*Contractor Initials*                                                          *Subcontractor Initials*



4.      **Final Payment.** A final payment, consisting of the unpaid balance of the Price, shall be made within 10 days after the last of the following to occur: (a) completion of the Work by Subcontractor, (b) acceptance thereof by the Owner, (c) final payment by Owner to Contractor under the Contract on account of the Work, (d) furnishing of evidence satisfactory to Contractor that there are no claims, obligations, or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred in connection with the Work, (e) delivery of all guaranties, warranties, bonds, instruction manuals, performance charts, diagrams, as-built drawings and similar items required of Subcontractor or its suppliers or subcontractors and (f) delivery of a general release, in a form satisfactory to Contractor, executed by Subcontractor running to and in favor of Contractor and Owner.

5.      **Payment Conditions.**      Subcontractor will receive the payments made by Contractor and will hold the right to receive such payments as a trust fund to be applied first to the payment of laborers, suppliers, subcontractors and others responsible for the Work justifying such payments, and all taxes and insurance applicable thereto; and Subcontractor will so apply the payments from Contractor.

Subcontractor shall, as often as requested by Contractor, furnish such information, evidence and substantiation as Contractor may require with respect to the extent and value of current progress and the nature and extent of all obligations incurred by Subcontractor in connection with the Work and all payments made by Subcontractor on account thereof.

Contractor reserves the right to withhold, as an extraordinary reserve and without limiting its other rights and remedies, an amount sufficient: (a) to defend, satisfy and discharge any asserted claim that Subcontractor (or its subcontractors) has failed to make payment for labor, services, materials, equipment, taxes, or other items or obligations furnished or incurred in connection with the Work or has caused damage to the Work or to any other work on the Project or (b) to remedy any other default by Subcontractor hereunder.

Subcontractor agrees that Contractor has the right to offset against any funds due Subcontractor, any amounts incurred or due Contractor, or incurred or due to material suppliers, or other suppliers, laborers, subcontractors, or others by the Subcontractor on this Project~~, or any other project on which Subcontractor has performed work for Contractor~~.

No Payment hereunder shall be conclusive evidence of the performance or progress of the Work and no payment shall be construed to be acceptance of defective, faulty or improper work or materials.

6.      **Time.**   Time is the essence. Therefore, Subcontractor shall: (a) submit to Contractor within 10 days a detailed proposed schedule for the Work for Contractor's use in preparing an overall progress schedule for the entire work and its several parts under the Contract; (b) begin the Work upon Contractor's order to do so; (c) coordinate and perform the Work, and its several parts, diligently and promptly and in such order and sequence as Contractor may direct and as will assure the efficient and timely prosecution, and will not delay completion, of the entire work and its several parts under the Contract; and (d) furnish at all times sufficient, qualified and competent forces and supervision, and adequate, conforming and usable materials, equipment, plant, tools and other necessary things, to achieve progress according to Contractor's progress schedule.

7.      **Extensions of Time.**      Should Subcontractor, without fault or neglect on its own part, be delayed in the commencement, prosecution, or completion of the Work by the fault or neglect of Contractor, Subcontractor shall be entitled to a reasonable extension of time, only.  Should Subcontractor, without fault or neglect on its own part, be delayed in the commencement, prosecution, or completion of the Work by an act of God or any other cause beyond the control of Contractor and Subcontractor that entitles Contractor to an extension of time under the Contract Documents, Subcontractor shall be entitled to an extension of time, only, determined in accordance with the Contract Documents. In no event shall Subcontractor be entitled to compensation or damages for any delay in the commencement, prosecution, or completion of the Work except to the extent that Contractor shall receive such compensation or damages from Owner or other third party  (See Submission of Claim.) *except as set forth in numbered paragraph 4. of subcontractor's November 17, 2008.*

Notwithstanding anything to the contrary in the Contract Documents or this Subcontract, Subcontractor shall not be entitled to an extension of time unless a written notice of delay shall have been delivered to Contractor within ~~72 hours~~ after commencement of the claimed delay.  *five (5) working days.*

-3-

_____
*Contractor Initials*

_____
*Subcontractor Initials*



8.      Change Orders. Owner has reserved the right under the Contract Documents to require Contractor to make changes in the Work, including additions thereto and deletions therefrom. Without notice to any surety and without invalidating this Subcontract, Contractor may from time to time, by written order ("Change Order") to Subcontractor, make changes in the Work to the same extent and in the same manner as may be required of Contractor by Owner under the Contract Documents; and Subcontractor shall thereupon perform the changed Work in accordance with the terms of this Subcontract.

Upon request of Contractor, and in time and manner sufficient to permit Contractor to comply with its obligations under the Contract Documents, Subcontractor shall submit a written proposal for any applicable Price or time adjustment attributable to the changed work, amply detailed and supported and conforming to the requirements of the Contract Documents.

If the parties are able to agree upon the amount of the Price adjustment and the extent of any time adjustment, such adjustments shall be set forth in the Change Order which shall be accepted by Subcontractor. If the parties are unable to agree upon such adjustments, Contractor may elect to issue the Change Order to Subcontractor, and any adjustments to Price or time shall be subject to ultimate determination in accordance with Contract Documents for Force Account Work; and Subcontractor shall, nonetheless, proceed immediately with the changed Work.

In no event shall Subcontractor proceed with changed or extra Work without a Change Order or a written order or agreement for extra Work; and Contractor shall not be liable for any additional costs incurred or delays encountered in the performance of such Work without such a written order.

9.      Bonds. If so indicated on page 1 hereof, Subcontractor shall furnish, within 10 days, at its expense, a performance bond and a payment bond, each in an amount equal to the Price, on Contractor's standard form and with surety or sureties satisfactory to Contractor.

10.      Insurance. Before commencing the Work and until completion and final acceptance thereof by Owner, Subcontractor shall obtain and maintain, at its expense, at least the insurance coverages specified in Schedule B attached hereto, all from companies, and in form and substance, acceptable to Contractor.
                                                                └ reasonably

As a condition of payment for the Work, Subcontractor shall furnish a certificate, satisfactory to Contractor, from each insurance company showing the required insurance to be in force and stating that the insurance will not be canceled or changed except upon at least 30 days written notice thereof to Contractor or as otherwise required by the Contract Documents.

To the extent that Subcontractor maintains insurance coverage for loss or damage to property, Subcontractor hereby waives subrogation of claims against Contractor, Owner, other subcontractors, and their agents, employees and servants.

─ negligent
11.      Indemnity. To the full extent permitted by law, Subcontractor agrees to ~~defend,~~ indemnify and save harmless Contractor and Owner, and their ~~agents,~~ servants and employees, from and against any claim, cost, expense, or liability (including attorney's fees), attributable to bodily injury, sickness, disease, or death, or to damage to or destruction of property (including loss of use thereof), caused by, ~~arising out of, resulting from, or occurring in connection with~~ the performance of the Work by the Subcontractor, its subcontractors, or their agents, servants, or employees, ~~whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder;~~ provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the ~~sole~~ negligence of a party indemnified hereunder.  Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.   └ or by their subcontractors or consultants of any tier.

Should Owner or any other person assert a claim or institute a suit, action, or proceeding against Contractor involving the manner or sufficiency of the performance of the Work, Subcontractor shall ~~upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense, and Subcontractor shall~~ indemnify and save harmless Contractor and its ~~agents,~~ servants and employees, from and against any liability, loss, damage, or expense arising out of or relate to such claim, suit, action, or proceeding, to the extent directly caused by the negligence of subcontractor but not to the extent caused by the acts or omissions of Contractor or its subcontractors or consultants of any tier.

<table>
<tr><td>_____<br>Contractor Initials</td><td>_____<br>Subcontractor Initials</td></tr>
</table>



12.    **Assignment.**    Subcontractor shall not assign this Subcontract, or any monies due or to become due hereunder, or subcontract any substantial part of the Work, without the prior written consent of Contractor. Subcontractor shall not be relieved of its duties and obligations hereunder by any assignment or subcontract and shall be and remain as fully responsible and liable for the acts and omissions of its assignees and subcontractors, and all persons directly or indirectly employed by them, as Subcontractor is for its own acts and omissions and those of its agents, servants and employees.

13.    **Compliance.**    Subcontractor shall, at its own expense, obtain all necessary licenses and permits pertaining to the Work and comply with all statues, ordinances, rules, regulations and orders of any governmental or quasi-governmental authority having jurisdiction over the Work or the performance thereof, including, but not limited to , those relating to safety, wages, discrimination and equal employment opportunity. Subcontractor shall promptly correct any violations of such statutes, ordinances, rules, regulations and orders committed by Subcontractor, its agents, servants and employees; and Subcontractor shall receive and respond to, and shall ~~defend,~~ indemnify and save harmless Contractor and Owner and their agents, servants and employees from and against any loss, liability or expense arising from, any such violations and any citations, assessments, fines or penalties resulting therefrom, *to the extent directly caused by Subcontractor but not to the extent caused by Owner, Contractor or their separate Subcontractors or consultants at any time.*

14.    **Safety.**    Subcontractor shall comply with all applicable federal, state, and local laws governing safety, health and sanitation. Subcontractor shall provide and utilize all safeguards, safety devices and protective equipment including, but not limited to, hard hats, safety belts, eye protection, ear protection and proper clothing; and Subcontractor shall take any other needed actions as Subcontractor, Contractor or Owner may determine, reasonably necessary to protect the life and health of employees, safety of the public and to protect property in connection with the performance of Work covered by the Contract.    *This subparagraph shall not be interpreted to impose on Subcontractor a duty to protect workmen or others in connection with their own work or activities.*

Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the Work is its responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish and implement safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by Contractor and Owner, including, but not limited to, any requirements imposed by the Contract Documents. Subcontractor shall comply with <u>Contractor's Safety Program</u> and the reasonable recommendations of insurance companies having an interest in the Project; and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of its responsibility therefor. *if and to the extent caused by Subcontractor's activities,*

15.    **Cleaning up.**    Subcontractor shall, at its own expense: (a) keep the premises at all times free from waste materials, packaging and other debris accumulated in connection with the Work, by collecting and removing such debris from the job site on a daily basis; (b) at the completion of the Work in each area, sweep and otherwise make the Work and its immediate vicinity "broom-clean;" (c) at final inspection clean and prepare the Work for acceptance by Owner.

16.    **Quality.**    Subcontractor shall provide quality materials and workmanship conforming to Contract requirements and good industry practices. ~~Subcontractor shall provide proper facilities and opportunity at all times for the inspection of the Work by Contractor and Owner and their representatives. Subcontractor shall, within 24 hours after~~ receiving written notice from Contractor or Owner, proceed to take down and remove ~~promptly all~~ portions of the Work which the Contractor or Owner shall ~~have condemned~~ as unsound, improper, ~~or in any way~~ failing to conform to the Contract Documents or this Subcontract and shall replace ~~the same with~~ proper and satisfactory Work and make good all Work damaged or destroyed thereby. Contractor's ~~failure to discover and notify~~ Subcontractor of defective or nonconforming Work, at the time the Work or any portion thereof is performed or completed, shall not ~~relieve~~ Subcontractor of responsibility for replacement of the defective or nonconforming Work and all damages therefrom. If the Owner ~~elects to accept~~ defective or ~~nonconforming Work, Contractor may require an appropriate and equitable adjustment in the price to the extent required of~~ ~~Contractor.~~

-5-

_____
Contractor Initials

_____
Subcontractor Initials

Case 6:17-cv-00018-NKM-RSB   Document 1-1   Filed 02/17/17   Page 29 of 45   Pageid#: 34



17.  **Guarantees.**  Subcontractor warrants and guarantees the Work to the full extent provided for in the Contract Documents. ~~Without limiting the foregoing or any other liability or obligation with respect to the Work, Subcontractor shall, at its own expense and by reason of its express warranty, make good any faulty, defective, or improper parts of the Work discovered within one year from the date of acceptance of the Project by the Owner or within such longer period as may be provided in the Contract Documents.~~

18.  **Submittals.**  Subcontractor shall immediately prepare or obtain and promptly submit to Contractor shop and erection drawings, samples, product data, catalog cuts, laboratory and inspection reports and engineering calculations, all as may be required by the Contract Documents or as may be necessary or appropriate to describe the details of the Work. Approval of drawings or other submittals by Contractor or Owner shall not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents or its responsibility for the proper matching of the Work to the contiguous work.

19.  **Performance.**  The Work shall be performed and furnished under the direction and to the satisfaction of the prevailing standard of care the Owner and Contractor, but Subcontractor shall not thereby be relieved of its obligation to supervise the work, using ~~its best skill and attention~~, or its obligation to perform the Work as provided for herein. Subcontractor shall be bound by the interpretations and decisions of the Owner to the same extent as Contractor may be bound thereby under the Contract Documents.

Subcontractor shall notify and obtain the approval of Contractor before the arrival of forces or delivery of materials and equipment to the job site, before any substantial change in its forces, and before leaving the job site for any reason.

Subcontractor shall timely check all Contract Documents and notify Contractor of any discovered of its discrepancies or conflicts before performing the Work, and Subcontractor shall be responsible for any extra costs resulting from its failure to do so. Subcontractor shall cooperate with Contractor and other subcontractors in the performance of the Work.

20.  **Liens.**  Subcontractor shall ~~defend,~~ indemnify and save harmless Contractor, Contractor's sureties and Owner from any lien or claim of lien filed or maintained by any laborer, materialman, subcontractor or other person directly or indirectly acting for, through, or under Subcontractor, against the Project or any part thereof or any interest therein or against any monies due or to become due from Owner to Contractor or from Contractor to Subcontractor. Without limiting the foregoing, Subcontractor shall cause any such lien or claim of lien to be satisfied, removed or discharged by bond, payment or otherwise within 10 days from the date of filing or receipt as the case may be.

21.  **Patents.**  Subcontractor shall ~~defend,~~ indemnify and save harmless Contractor and Owner, from and against any claim, cost, expense or liability (including attorney's fees) arising out of or resulting from infringement ~~or alleged~~ infringement of any patent rights ~~attributable to the Work,~~ except to the extent that Owner may have assumed responsibility therefor under the Contract Documents. directly caused by subcontractor

22.  **Labor.**  Subcontractor agrees that where its work is stopped, delayed or interfered with by strikes, slow downs or similar interruptions or disturbances (including cases where the Subcontractor's employees are engaged in a work stoppage solely as a result of a labor dispute involving Contractor or others and not in any manner involving Subcontractor), Contractor shall have the rights and remedies provided for in paragraph 24. Subcontractor shall maintain and exercise control over all employees engaged in the performance of the Work, and Subcontractor shall, to the extent permitted by law, remove or cause to be removed from the Project any employee whose presence is detrimental to the orderly prosecution of the Work.

Except if due to Contractor's negligence,
23.  **Damage.**  Contractor shall not be liable or responsible for loss or damage to the equipment, tools, facilities, or other personal property owned, rented or used by Subcontractor, or anyone employed by Subcontractor, in the performance of the Work; and Subcontractor shall maintain such insurance and take such protective action as it deems desirable with respect to such property. Contractor shall not be liable or responsible for any loss or damage to the Work, and Subcontractor shall be responsible for the correction or restoration of any such loss or damage to the Work, or to the work of Contractor or any other subcontractor, resulting from the operations of Subcontractor, or its subcontractors, agents, servants or employees hereunder. Subcontractor shall take reasonable precautions to protect the Work from loss or damage prior to acceptance by Owner. Except if due to Contractor's negligence;

_____        _____
Contractor Initials          Subcontractor Initials

ENGLISH

-6-

24. Default. Should Subcontractor at any time: (a) *negligently or intentionally* fail to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with the skill, conformity, promptness, and diligence required hereunder, (b) cause stoppage or delay of or interference with the Project work, (c) become insolvent, or (d) fail in the performance or observance of any of the covenants, conditions, or other terms of this Subcontract, then in any such event, each of which shall constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor notice of default and 48 hours within which to cure, have the right to exercise any one or more of the following remedies:

(i) require that Subcontractor utilize, at its own expense, overtime labor (including Saturday and Sunday work) and additional shifts as necessary to overcome the consequences of any delay attributable to Subcontractor's default;

(ii) remedy the default by whatever *reasonable* means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment previously purchased for that purpose by Subcontractor) and deducting the cost thereof (plus an allowance for administrative burden equal to 15% of such costs) from any monies due or to become due to Subcontractor hereunder;

(iii) after giving Subcontractor an additional 48 hours notice (at any time following the expiration of the initial 48 hours notice and curative period), terminate this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work , and all materials, equipment, facilities, plant, tools, scaffolds and of Subcontractor relating to the Work, for the purposes of completing the Work and securing to Contractor the payment of its costs (plus an allowance for administrative burden equal to 15% of such costs) and other damages under the Subcontract and for the breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site (and Contractor may at any time file this Subcontract as a financing statement under applicable law); and

(iv) recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees suffered or incurred by Contractor by reason of or as a result of Subcontractor's default. *To the extent directly caused by*

After completion of the Work by the exercise of any one or more of the above remedies and acceptance of the Work and payment thereof by Owner, Contractor shall promptly pay Subcontractor any balance of the Price.

The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing at law or in equity.

Except as limited by the Subcontract, Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Contractor. Any default by Contractor shall be deemed waived unless Subcontractor shall have given Contractor written notice thereof within 5 *14* days after the occurrence of such default. Subcontractor shall not be entitled to stop the Work or terminate this Subcontract on account of Contractor's failure to pay an amount claimed due hereunder (including changed or extra Work) so long as Subcontractor shall not have adequately substantiated the amount due or so long as a good faith dispute exists as to the amount due. Subcontractor shall not be entitled to stop the Work on account of a default by Contractor unless such default shall have continued for more than 7 days after Contractor's receipt of written notice of such default from Subcontractor.

Subcontractor shall not be entitled to terminate this Subcontract except for a substantial and material breach by Contractor which shall have continued, uncured, for a least an additional 30 days after (1) Subcontractor shall have stopped work in accordance with the requirements hereof and (2) Contractor shall have received written notice of Subcontractor's intention to terminate this Subcontract.

_____
Contractor Initials

_____
Subcontractor Initials

-7-

ENGLISH

25.   **Submission of Claim.**   In the event the Subcontractor wishes to file a claim against Owner for extra compensation and/or a time extension, or has any other dispute relative to the performance of the work against the Contracting Owner, such claim or dispute will be processed by the Contractor for the Subcontractor in accordance with the applicable provisions of the contract. Subcontractor shall have the duty to cooperate with Contractor and Subcontractor shall be afforded a reasonable opportunity to present information and testimony involving its rights.

Contractor shall have the exclusive right to accept or appeal the decision of any authorized person, board, court or tribunal and such final resolution shall be the complete and absolute settlement of Subcontractor's claim. The Subcontractor shall have no recourse against the Contractor for payment of claims denied or reduced by Contracting Owner. All costs for processing such claim or dispute on behalf of Subcontractor, including attorneys' fees, shall be borne by Subcontractor.
                                                                                                    *reasonable*

The pendency of a claim shall not interfere with the progress of the Work by Subcontractor nor limit the right of Contractor to proceed, in good faith, to remedy an alleged default by Subcontractor.

26.   **Early Termination.**   If Owner terminates the Contract or stops the Work for a reason other than the default of Contractor, Contractor may terminate this Subcontract or stop the Work for the same reason, and Subcontractor's rights and remedies (including the basis for compensation) shall be limited to the corresponding rights and remedies available to Contractor under the Contract Documents. In no event shall Subcontractor be entitled to consequential damages or loss of profits on portions of the Work not yet performed.

27.   **Notices.**   All written notices provided for in the Subcontract Documents shall be deemed given if delivered personally to a responsible representative of the party or if sent by telegram (with written confirmation copy following) or by regular mail to the party at its address specified herein. Either party may from time to time, by notice to the other as herein provided, designate a different address to which notices to it should be sent.

28.   **Environmental.**   Subcontractor will comply with all Federal, State and Local Laws, rules, regulations and ordinances controlling air, water, noise, solid wastes and other pollution or relating to the storage, transport, release or disposal of hazardous materials, substances or waste. Subcontractor shall not dispose of any wastes of any kind, whether hazardous or not, on any premises owned or operated by the Contractor or Owner. Subcontractor shall furnish the Contractor written notice of any and all releases of hazardous wastes or substances whenever such releases are required to be reported to any Federal, State or Local authority.

Such written notice shall identify the substance released, the amount released, and the measures undertaken to clean up and remove the released material and any contaminated soil or water, and shall further certify that no contamination remains. Subcontractor agrees to indemnify and hold harmless the Owner and Contractor, its Officers, Agents and Employees, for all liability, fines, penalties or attorney fees resulting from violation of the above and agrees to reimburse the Owner and the Contractor for all costs and expenses incurred by the Contractor in eliminating or remedying such violations unless such liability, fines or penalties arise from the sole negligence of the Owner and/or the Contractor.

29.   **Miscellaneous.**   (a) All matters relating to the validity, performance or interpretation of this Subcontract shall be governed by the law applicable to the validity, performance or interpretation, as the case may be, of the Contract.

(b) This Subcontract, including the documents incorporated herein by reference, embodies the entire agreement of the parties and supersedes all prior negotiations, agreements and understandings relating to the subject matter hereof.

-8-

_____
*Contractor Initials*

_____
*Subcontractor Initials*



(c)This Subcontract may not be changed in any way except as herein provided or by a writing signed by a duly authorized officer or agent of each party.  No requirement of this Subcontract may be waived except in writing signed by a duly authorized officer of the waiving party.

(d)The provisions of this Subcontract and the Contract Documents are intended to supplement and complement each other.  If, however, any provision of this Subcontract irreconcilably conflicts with a provision of the Contract Documents, the provision imposing the greater duty on the Subcontractor shall govern.
                        *or Contractor*
(e)Where the context requires, neuter terms used herein shall include the masculine and feminine, and singular terms shall include the plural, and vice versa.

IN WITNESS WHEREOF, the parties have duly executed this Subcontract as of the date first above written.

ATTEST:                          W. C. ENGLISH, INCORPORATED

                                 By _____
                                 Title: Wilson L. Dickerson, Jr. Senior Vice President

                                 Date: __10/14/09_____


ATTEST:                          _____
                                            Subcontractor

                                 By __Partner_____
                                    Title:

                                 Date: __10/9/09_____

**Subcontractor Check one:**

_____ Corporation

__X____ Partnership/Joint Venture

_____ Individual

_____ Other

(If Corporation, signature of OFFICER required.)

*Subcontractor's Federal Employer Identification No.: __52-0599112__
(If no E.I. Number, enter Business Owner's Social Security No.)

-9-

Contractor Initials                    Subcontractor Initials

## Schedule B ("Insurance")

Pursuant to Paragraph 10, Subcontractor shall maintain at least the following insurance coverages in addition to other coverages or any greater limits required by the Contract Documents:

| | | | |
|---|---|---|---|
| 1. | Workers' Compensation and Employer's Liability | In accordance with the laws of the state in which the work is preformed. | |
| 2. | Comprehensive General Liability | Bodily Injury (and Death): | $1,000,000.00 Each Occurrence |
| | | Property Damage: | $1,000,000.00 Each Occurrence |
| | | General Aggregate: | $2,000,000.00 |
| | | Personal & Advertising Injury: | $1,000,000.00 Per Person |
| | | Products-Completed Operations Aggregate: | $2,000,000.00 |
| 3. | Comprehensive Automobile | Bodily Injury (and Death): | $1,000,000.00 Each Person |
| | | | $1,000,000.00 Each Occurrence |
| | | Property Damage: | $1,000,000.00 Each Occurrence |

**W. C. ENGLISH, Incorporated MUST BE NAMED AS ADDITIONAL INSURED ON THE GENERAL LIABILITY POLICY.**

Insurance policies shall provide coverage against the following risks:

| | | |
|---|---|---|
| Comprehensive General Liability | a. | Broad Form Property Damage |
| | b. | Independent Contractors |
| | c. | XCU Hazards (Explosion, Collapse, Underground Damage) |
| | d. | Contractual Liability (Arising from Indemnity Agreement in Subcontract) |
| Comprehensive Automobile Liability | a. | All Owned Vehicles |
| | b. | Non-Ownership Liability |
| | c. | Hired Vehicles |

**THIRTY (30) DAY NOTICE OF CANCELLATION REQUIRED**

-10-

_____
*Contractor Initials*

_____
*Subcontractor Initials*

Contractor
Subcontractor
Project Manager(s)
Job Superintendent
Accounts Payable
File

RECEIVED

2009 MAY 27 AM 11:44

SUBCONTRACT NO. _____ 2270-011 _____

Is Subcontractor a DBE/WBE/SWAM

☐ Yes      ☐ No

If yes, is it for Credit?

☐ Yes      ☐ No

"Contractor": W. C. English, Incorporated
615 Church Street (24504)
P. O. Box P-7000
Lynchburg, VA 24505
Telephone: (434) 845-0301      Fax: (434) 845-0306

Date: ___March 26, 2009___  WCE Job No. ___2270___

"Project": Project No.: 0081-081-708, P101, R201,
C501, B601,B602,B603
FHWA NO: NCII-081-2(271)
Contract ID No. C00084363DB10
I-81 Truck Climbing Lanes MP 195-202
Rockbridge County, Virginia

"Subcontractor": WILBUR SMITH ASSOCIATES
(Vendor #34893) 2108 West Laburnum Avenue
Suite 210
Richmond, VA  23227

"Owner": Virginia Department of Transportation
Richmond, Virginia
*Contract Dated with Owner: February 20, 2009*

**Attention: Mr. Randall Harris**
TEL: (804) 377-2300      FAX: (804) 377-2301

a. Show Subcontract No. _2270-011_ , Job Name and Job. No. ___2270___ and Cost Code _SC-061100_ on all shipping papers, invoices and correspondence.
b. Submit shop drawings/material submittals in __8__ copies for approval within __60__ days prior to work beginning.
c. Performance and Payment Bond: _NO_  Required    In lieu of bond, Proof of Errors and Omissions Insurance Required
d. Retained Percentage __0__
e. Insurance Certificate required.   30 DAY NOTICE OF CANCELLATION REQUIRED. W. C. ENLGISH, Incorporated MUST BE NAMED AS ADDITIONAL INSURED ON THE GENERAL LIABILITY POLICY. SEE PAGE 10 FOR LIMITS REQUIRED.

Contractor and Subcontractor, with offices at the addresses shown above, agree for themselves, their successors and assigns as follows:

## SCHEDULE A ( "Work" )

THIS IS OUR ACCEPTANCE of your written quotation to furnish all labor, equipment and materials to perform the Construction QC Inspection on the subject project in strict accordance plans prepared by AECOM and approved by VDOT.

Pay Schedule:
| | | |
|---|---|---|
| Month 1 of Construction | = | $180,000.00 |
| Month 2 of Construction | = | $180,000.00 |
| Month 3 of Construction | = | $180,000.00 |
| Remaining months of Construction | = | $131,434.24/month  @ 33 months = $4,337,330.00 |

Totaling = $4,877,330.00

*Wilbur Smith & Associates price includes $731,220.00 in DBE participation using NXL Construction Services.*

_____  WS
Contractor Initials

_____  K a H
Subcontractor Initials

Date Contract Received: _5/07/04_
Date Bonds Received: _N/A_
Date Insurance Certificate Received: _3/27/09_

EXHIBIT B

Contractor
Subcontractor
Project Manager(s)
Job Superintendent
Accounts Payable
File

SUBCONTRACT NO. _____ 2270-011 _____

Is Subcontractor a **DBE**/WBE/SWAM

☐ Yes        ☐ No

If yes, is it for Credit?

☐ Yes        ☐ No

## Notes:
1. **Bond is not required,** in lieu of bond Proof of Errors and Omissions insurance is required.
2. Furnish paperwork per attached "Items Required from Subcontractor" list <u>as soon as possible.</u>
3. The attached "Required Contract Provisions Federal-Aid Construction Contracts" is hereby made apart of this Subcontract Agreement <u>(please do not remove).</u>
4. Predetermined Minimum Wages apply to this project and copy is enclosed **for your use** <u>(please do not remove)</u>.
5. Please furnish home telephone number for emergency use ___804 - 323 - 3917___ ( 804-396-5276(c) )
6. <u>Wilbur Smith Associates</u> to begin prescribed work within <u>2 week notice</u> of verbal or written notice or be held responsible for any cost incurred by English as a result of such delays beyond the <u>2 week notice</u> and reimburse English for this cost from monies due <u>Wilbur Smith Associates.</u>
7. Prices are firm for the duration of the project.
8. <u>Notice of Termination</u>
   If the Design-Builder ("Contractor") is served with a "Notice of Termination" from the Department, the Subcontractor shall stop work on the date of and to the extent specified in the Notice of Termination. The Contractor shall communicate, to the Subcontractor, immediately upon receipt thereof, any Notice of Termination issued by the Department to all affected Subcontractors. The Subcontractor shall include this provision in all of its subcontracts at all tiers.
9. Subcontractors price includes $731,220.00 in DBE participation using NXL Construction Services. Subcontractor acknowledges that Prime Contractor will receive DBE contract goal credit for payment made under this subcontract agreement provided NXL performs a Commercially Useful Function ("CUF"), as defined in Section 110.04 of the Prime Contract. Subcontractor agrees that this subcontract may be terminated if it is determined that NXL is not performing a CUF. However, Subcontractor will be responsible for providing $731,200.00 in DBE participation.
11. W. C. English, Incorporated to provide office for inspectors and storage boxes for Nuclear Density Machines.
12. Total project price is based on a 36 month construction duration. If project extends longer than 37 months WSA will be due additional compensation based on prices above prorated to actual number of months and inspections.
13. Asphalt producer will be responsible for running profil-o-graph and supplying data to VDOT and QAM.

**Price:   $4,877,330.00**

_____ Contractor Initials _____        _____ Subcontractor Initials _____

## ITEMS REQUIRED FROM SUBCONTRACTOR

1.   ~~Form C-31 (Form Enclosed)~~
2.   ~~Payment and Performance Bonds~~
3.   Current Form C-64
4.   Current E.E.O. Meeting Minutes
5.   E.E.O. Policy
6.   Letter designating E.E.O. Officer
7.   Certificate of Insurance with **W. C. English, Incorporated must be named additional insured as well as a 30-Day Notice of Cancellation**
8.   Source of Materials, if applicable (ALL Source of Materials must be faxed or emailed to slloyd@englishconst.com)

The items above need to be returned as soon as possible—with executed subcontract.

**In addition to the above, the following forms are also required:**

1.   Form C-57   --   Submit each month for the first 3 months that you work and every July thereafter until your work is completed.

2.   Form C-63   --   If you have DBE subcontractors working for you on this project, you must submit a C-63 every month you have DBE dollars to report.  **PLEASE do not submit C-63 if you do NOT have DBE activity to report.**

3.   Form C-64   --   Submit as soon as possible (as requested above) and every 6 months thereafter until your work is finished.

4.   Submit weekly three (3) copies of **Certified Payrolls** for each week worked.



1.      **Work.**   Subcontractor shall perform and furnish all labor, supervision, services, materials, equipment, tools, transportation, storage and all other things necessary to prosecute and complete the work identified and described in Schedule A attached hereto (the "Work"), being a portion of the Work required of Contractor under the Contract between Owner and Contractor. The Work shall be performed by Subcontractor in a good and workmanlike manner strictly in accordance with the Contract Documents, consisting of the Contract and the plans, specifications (including, but not limited to, general, special and supplemental conditions), addenda and other documents identified or attached hereto, and all subsequently and duly issued modifications thereto.

The Contract Documents are available for examination by Subcontractor at all reasonable times at the office of Contractor. Subcontractor represents and agrees that it has carefully examined and understands the Contract Documents relevant to the Work; has adequately investigated the nature and conditions of the Project site and locality; has familiarized itself with conditions affecting the difficulty of the Work; and has entered into this Subcontract based on its own examination, investigation and evaluation and not in reliance upon any opinions or representations of Contractor.

With respect to the Work, Subcontractor agrees to be bound to Contractor by the terms and conditions of the Contract Documents and this Subcontract and hereby assumes toward Contractor all of the duties, obligations and responsibilities that Contractor has by the Contract Documents assumed toward the Owner.

2.      **Price.**   Contractor shall pay to Subcontractor for the satisfactory performance and completion of the Work and all the duties, obligations and responsibilities of Subcontractor under this Subcontract, the sum set forth above as the Price, subject to additions and deductions as herein provided. To the extent that the Work is to be performed on a unit price basis, the Price shall be computed in accordance with the unit prices set forth in Schedule A based on actual quantities determined in accordance with the Contract Documents and this Subcontract. The price and all unit prices shown in Schedule A , shall be deemed to include all costs of Subcontractor's performance of the Work, including but not limited to, the costs of labor, supervision, services, materials, equipment, tools, transportation, storage, insurance and taxes, and allowance for overhead and profit.

3.      **Progress Payments.**   On or before each Monthly Billing Date, Subcontractor shall submit to Contractor, in such form and supported by such data as Contractor may require, a progress payment application showing the value of the Work installed to the satisfaction of Contractor and Owner ("Completed Work"), plus the value of the material and equipment for incorporation in the Work suitably stored (to the satisfaction of Contractor and Owner) at the project site or other approved location ("Stored Work") if, and only if, the Contract Documents provide for payments to Contractor on that basis, as of such date.

Any standard form required by Owner or the Contract Documents to be submitted prior to the issuance of Contractor's Monthly Estimate, including, but not limited to, forms WH-347 (Payroll), C-63, C63A (DBE/WBE), C57 or PR1391 (EEO), shall be submitted in a prompt and timely manner so as not to delay payment by owner of Contractor's Monthly Estimate. Time is of the essence.  Should Subcontractor delay payment by Owner of Contractor's Monthly Estimate, for whatever reason, Subcontractor shall be liable to the Contractor at the rate of 1½% per month of the entire monthly estimate less payment due Subcontractor, which sum shall be deducted from Subcontractor's payment for that estimate.

Within 7 days after receiving a progress payment from Owner under the Contract, Contractor shall make a progress payment to Subcontractor equal to the value of the Completed Work as of the corresponding Monthly Billing Date, to the extent approved by Contractor and allowed and paid by Owner on account of the Work, and after deducting (a) all previous payments, (b) current retainage (meaning a reserve equal to the Retained Percentage times the allowed value of Completed Work and Stored Work, plus any extraordinary reserve provided for herein) and (c) all charges or backcharges for services, materials equipment and other items furnished or otherwise chargeable by Contractor to Subcontractor.  It is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent, upon the Contractor receiving payment (including retainage) from Owner.

Contractor reserves the right to advance the date of payment (including final payment) under this Subcontract if, in its sole judgement, it becomes desirable to do so.

-2-

_____                    _____
*Contractor Initials*                       *Subcontractor Initials*

4.    **Final Payment.**  A final payment, consisting of the unpaid balance of the Price, shall be made within 10 days after the last of the following to occur: (a) completion of the Work by Subcontractor, (b) acceptance thereof by the Owner, (c) final payment by Owner to Contractor under the Contract on account of the Work, (d) furnishing of evidence satisfactory to Contractor that there are no claims, obligations, or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred in connection with the Work, (e) delivery of all guaranties, warranties, bonds, instruction manuals, performance charts, diagrams, as-built drawings and similar items required of Subcontractor or its suppliers or subcontractors and (f) delivery of a general release, in a form satisfactory to Contractor, executed by Subcontractor running to and in favor of Contractor and Owner.

5.    **Payment Conditions.**    Subcontractor will receive the payments made by Contractor and will hold the right to receive such payments as a trust fund to be applied first to the payment of laborers, suppliers, subcontractors and others responsible for the Work justifying such payments, and all taxes and insurance applicable thereto; and Subcontractor will so apply the payments from Contractor.

Subcontractor shall, as often as requested by Contractor, furnish such information, evidence and substantiation as Contractor may require with respect to the extent and value of current progress and the nature and extent of all obligations incurred by Subcontractor in connection with the Work and all payments made by Subcontractor on account thereof.

Contractor reserves the right to withhold, as an extraordinary reserve and without limiting its other rights and remedies, an amount sufficient: (a) to defend, satisfy and discharge any asserted claim that Subcontractor (or its subcontractors) has failed to make payment for labor, services, materials, equipment, taxes, or other items or obligations furnished or incurred in connection with the Work or has caused damage to the Work or to any other work on the Project or (b) to remedy any other default by Subcontractor hereunder.

Subcontractor agrees that Contractor has the right to offset against any funds due Subcontractor, any amounts incurred or due Contractor, or incurred or due to material suppliers, or other suppliers, laborers, subcontractors, or others by the Subcontractor on this Project or any other project on which Subcontractor has performed work for Contractor.

No Payment hereunder shall be conclusive evidence of the performance or progress of the Work and no payment shall be construed to be acceptance of defective, faulty or improper work or materials.

6.    **Time.**    Time is the essence.  Therefore, Subcontractor shall: (a) submit to Contractor within 10 days a detailed proposed schedule for the Work for Contractor's use in preparing an overall progress schedule for the entire work and its several parts under the Contract; (b) begin the Work upon Contractor's order to do so; (c) coordinate and perform the Work, and its several parts, diligently and promptly and in such order and sequence as Contractor may direct and as will assure the efficient and timely prosecution, and will not delay completion, of the entire work and its several parts under the Contract; and (d) furnish at all times sufficient, qualified and competent forces and supervision, and adequate, conforming and usable materials, equipment, plant, tools and other necessary things, to achieve progress according to Contractor's progress schedule.

7.    **Extensions of Time.**    Should Subcontractor, without fault or neglect on its own part, be delayed in the commencement, prosecution, or completion of the Work by the fault or neglect of Contractor, Subcontractor shall be entitled to a reasonable extension of time, only.    Should Subcontractor, without fault or neglect on its own part, be delayed in the commencement, prosecution, or completion of the Work by an act of God or any other cause beyond the control of Contractor and Subcontractor that entitles Contractor to an extension of time under the Contract Documents, Subcontractor shall be entitled to an extension of time, only, determined in accordance with the Contract Documents.  In no event shall Subcontractor be entitled to compensation or damages for any delay in the commencement, prosecution, or completion of the Work except to the extent that Contractor shall receive such compensation or damages from Owner or other third party. (See Submission of Claim.)

Notwithstanding anything to the contrary in the Contract Documents or this Subcontract, Subcontractor shall not be entitled to an extension of time unless a written notice of delay shall have been delivered to Contractor within 72 hours after commencement of the claimed delay.

-3-

_____
Contractor Initials

_____
Subcontractor Initials

8.      **Change Orders.**   Owner has reserved the right under the Contract Documents to require Contractor to make changes in the Work, including additions thereto and deletions therefrom. Without notice to any surety and without invalidating this Subcontract, Contractor may from time to time, by written order ("Change Order") to Subcontractor, make changes in the Work to the same extent and in the same manner as may be required of Contractor by Owner under the Contract Documents; and Subcontractor shall thereupon perform the changed Work in accordance with the terms of this Subcontract.

Upon request of Contractor, and in time and manner sufficient to permit Contractor to comply with its obligations under the Contract Documents, Subcontractor shall submit a written proposal for any applicable Price or time adjustment attributable to the changed work, amply detailed and supported and conforming to the requirements of the Contract Documents.

If the parties are able to agree upon the amount of the Price adjustment and the extent of any time adjustment, such adjustments shall be set forth in the Change Order which shall be accepted by Subcontractor. If the parties are unable to agree upon such adjustments, Contractor may elect to issue the Change Order to Subcontractor, and any adjustments to Price or time shall be subject to ultimate determination in accordance with Contract Documents for Force Account Work; and Subcontractor shall, nonetheless, proceed immediately with the changed Work.

In no event shall Subcontractor proceed with changed or extra Work without a Change Order or a written order or agreement for extra Work; and Contractor shall not be liable for any additional costs incurred or delays encountered in the performance of such Work without such a written order.

9.      **Bonds.**   If so indicated on page 1 hereof, Subcontractor shall furnish, within 10 days, at its expense, a performance bond and a payment bond, each in an amount equal to the Price, on Contractor's standard form and with surety or sureties satisfactory to Contractor.

10.      **Insurance.**   Before commencing the Work and until completion and final acceptance thereof by Owner, Subcontractor shall obtain and maintain, at its expense, at least the insurance coverages specified in Schedule B attached hereto, all from companies, and in form and substance, acceptable to Contractor.

As a condition of payment for the Work, Subcontractor shall furnish a certificate, satisfactory to Contractor, from each insurance company showing the required insurance to be in force and stating that the insurance will not be canceled or changed except upon at least 30 days written notice thereof to Contractor or as otherwise required by the Contract Documents.

To the extent that Subcontractor maintains insurance coverage for loss or damage to property, Subcontractor hereby waives subrogation of claims against Contractor, Owner, other subcontractors, and their agents, employees and servants.

11.      **Indemnity.**   To the full extent permitted by law, Subcontractor agrees to defend, indemnify and save harmless Contractor and Owner, and their agents, servants and employees, from and against any claim, cost, expense, or liability (including attorney's fees), attributable to bodily injury, sickness, disease, or death, or to damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by the Subcontractor, its subcontractors, or their agents, servants, or employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage, or destruction is caused by the sole negligence of a party indemnified hereunder. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.

Should Owner or any other person assert a claim or institute a suit, action, or proceeding against Contractor involving the manner or sufficiency of the performance of the Work, Subcontractor shall upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense, and Subcontractor shall indemnify and save harmless Contractor and its agents, servants and employees, from and against any liability, loss, damage, or expense arising out of or relate to such claim, suit, action, or proceeding.

-4-

_____
Contractor Initials

_____
Subcontractor Initials

12.     **Assignment.**     Subcontractor shall not assign this Subcontract, or any monies due or to become due hereunder, or subcontract any substantial part of the Work, without the prior written consent of Contractor. Subcontractor shall not be relieved of its duties and obligations hereunder by any assignment or subcontract and shall be and remain as fully responsible and liable for the acts and omissions of its assignees and subcontractors, and all persons directly or indirectly employed by them, as Subcontractor is for its own acts and omissions and those of its agents, servants and employees.

13.     **Compliance.**     Subcontractor shall, at its own expense, obtain all necessary licenses and permits pertaining to the Work and comply with all statues, ordinances, rules, regulations and orders of any governmental or quasi-governmental authority having jurisdiction over the Work or the performance thereof, including, but not limited to , those relating to safety, wages, discrimination and equal employment opportunity. Subcontractor shall promptly correct any violations of such statutes, ordinances, rules, regulations and orders committed by Subcontractor, its agents, servants and employees; and Subcontractor shall receive and respond to, and shall defend, indemnify and save harmless Contractor and Owner and their agents, servants and employees from and against any loss, liability or expense arising from, any such violations and any citations, assessments, fines or penalties resulting therefrom.

14.     **Safety.**     Subcontractor shall comply with all applicable federal, state, and local laws governing safety, health and sanitation. Subcontractor shall provide and utilize all safeguards, safety devices and protective equipment including, but not limited to, hard hats, safety belts, eye protection, ear protection and proper clothing; and Subcontractor shall take any other needed actions as Subcontractor, Contractor or Owner may determine, reasonably necessary to protect the life and health of employees, safety of the public and to protect property in connection with the performance of Work covered by the Contract.

Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the Work is its responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish and implement safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by Contractor and Owner, including, but not limited to, any requirements imposed by the Contract Documents. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project; and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of its responsibility therefor.

15.     **Cleaning up.**     Subcontractor shall, at its own expense: (a) keep the premises at all times free from waste materials, packaging and other debris accumulated in connection with the Work, by collecting and removing such debris from the job site on a daily basis; (b) at the completion of the Work in each area, sweep and otherwise make the Work and its immediate vicinity "broom-clean;" (c) at final inspection clean and prepare the Work for acceptance by Owner.

16.     **Quality.**     Subcontractor shall provide quality materials and workmanship conforming to Contract requirements and good industry practices. Subcontractor shall provide proper facilities and opportunity at all times for the inspection of the Work by Contractor and Owner and their representatives. Subcontractor shall, within 24 hours after receiving written notice from Contractor or Owner, proceed to take down and remove promptly all portions of the Work which the Contractor or Owner shall have condemned as unsound, improper, or in any way failing to conform to the Contract Documents or this Subcontract and shall replace the same with proper and satisfactory Work and make good all Work damaged or destroyed thereby. Contractor's failure to discover and notify Subcontractor of defective or nonconforming Work, at the time the Work or any portion thereof is performed or completed, shall not relieve Subcontractor of responsibility for replacement of the defective or nonconforming Work and all damages therefrom. If the Owner elects to accept defective or nonconforming Work, Contractor may require an appropriate and equitable adjustment in the price to the extent required of Contractor.

-5-

_____
*Contractor Initials*

_____
*Subcontractor Initials*

17.     **Guarantees.**   Subcontractor warrants and guarantees the Work to the full extent provided for in the Contract Documents.  Without limiting the foregoing or any other liability or obligation with respect to the Work, Subcontractor shall, at its own expense and by reason of its express warranty, make good any faulty, defective, or improper parts of the Work discovered within one year from the date of acceptance of the Project by the Owner or within such longer period as may be provided in the Contract Documents.

18.     **Submittals.**   Subcontractor shall immediately prepare or obtain and promptly submit to Contractor shop and erection drawings, samples, product data, catalog cuts, laboratory and inspection reports and engineering calculations, all as may be required by the Contract Documents or as may be necessary or appropriate to describe the details of the Work. Approval of drawings or other submittals by Contractor or Owner shall not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents or its responsibility for the proper matching of the Work to the contiguous work.

19.     **Performance.**   The Work shall be performed and furnished under the direction and to the satisfaction of the Owner and Contractor, but Subcontractor shall not thereby be relieved of its obligation to supervise the work, using its best skill and attention, or its obligation to perform the Work as provided for herein.  Subcontractor shall be bound by the interpretations and decisions of the Owner to the same extent as Contractor may be bound thereby under the Contract Documents.

Subcontractor shall notify and obtain the approval of Contractor before the arrival of forces or delivery of materials and equipment to the job site, before any substantial change in its forces, and before leaving the job site for any reason.

Subcontractor shall timely check all Contract Documents and notify Contractor of any discrepancies or conflicts before performing the Work, and Subcontractor shall be responsible for any extra costs resulting from its failure to do so. Subcontractor shall cooperate with Contractor and other subcontractors in the performance of the Work.

20.     **Liens.**   Subcontractor shall defend, indemnify and save harmless Contractor, Contractor's sureties and Owner from any lien or claim of lien filed or maintained by any laborer, materialman, subcontractor or other person directly or indirectly acting for, through, or under Subcontractor, against the Project or any part thereof or any interest therein or against any monies due or to become due from Owner to Contractor or from Contractor to Subcontractor.  Without limiting the foregoing, Subcontractor shall cause any such lien or claim of lien to be satisfied, removed or discharged by bond, payment or otherwise within 10 days from the date of filing or receipt as the case may be.

21.     **Patents.**   Subcontractor shall defend, indemnify and save harmless Contractor and Owner, from and against any claim, cost, expense or liability (including attorney's fees) arising out of or resulting from infringement or alleged infringement of any patent rights attributable to the Work, except to the extent that Owner may have assumed responsibility therefor under the Contract Documents.

22.     **Labor.**   Subcontractor agrees that where its work is stopped, delayed or interfered with by strikes, slow downs or similar interruptions or disturbances (including cases where the Subcontractor's employees are engaged in a work stoppage solely as a result of a labor dispute involving Contractor or others and not in any manner involving Subcontractor), Contractor shall have the rights and remedies provided for in paragraph 24.  Subcontractor shall maintain and exercise control over all employees engaged in the performance of the Work, and Subcontractor shall, to the extent permitted by law, remove or cause to be removed from the Project any employee whose presence is detrimental to the orderly prosecution of the Work.

23.     **Damage.**   Contractor shall not be liable or responsible for loss or damage to the equipment, tools, facilities, or other personal property owned, rented or used by Subcontractor, or anyone employed by Subcontractor, in the performance of the Work; and Subcontractor shall maintain such insurance and take such protective action as it deems desirable with respect to such property.  Contractor shall not be liable or responsible for any loss or damage to the Work, and Subcontractor shall be responsible for the correction or restoration of any such loss or damage to the Work, or to the work of Contractor or any other subcontractor, resulting from the operations of Subcontractor, or its subcontractors, agents, servants or employees hereunder. Subcontractor shall take reasonable precautions to protect the Work from loss or damage prior to acceptance by Owner.

-6-

_Contractor Initials_                        _Subcontractor Initials_

24.     **Default.** Should Subcontractor at any time: (a) fail to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with the skill, conformity, promptness, and diligence required hereunder, (b) cause stoppage or delay of or interference with the Project work, (c) become insolvent, or (d) fail in the performance or observance of any of the covenants, conditions, or other terms of this Subcontract, then in any such event, each of which shall constitute a default hereunder by Subcontractor, Contractor shall, after giving Subcontractor notice of default and 48 hours within which to cure, have the right to exercise any one or more of the following remedies:

(i)     require that Subcontractor utilize, at its own expense, overtime labor (including Saturday and Sunday work) and additional shifts as necessary to overcome the consequences of any delay attributable to Subcontractor's default;

(ii)     remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment previously purchased for that purpose by Subcontractor) and deducting the cost thereof (plus an allowance for administrative burden equal to 15% of such costs) from any monies due or to become due to Subcontractor hereunder;

(iii)     after giving Subcontractor an additional 48 hours notice (at any time following the expiration of the initial 48 hours notice and curative period), terminate this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work , and all materials, equipment, facilities, plant, tools, scaffolds and of Subcontractor relating to the Work, for the purposes of completing the Work and securing to Contractor the payment of its costs (plus an allowance for administrative burden equal to 15% of such costs) and other damages under the Subcontract and for the breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site (and Contractor may at any time file this Subcontract as a financing statement under applicable law); and

(iv)     recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees suffered or incurred by Contractor by reason of or as a result of Subcontractor's default.

After completion of the Work by the exercise of any one or more of the above remedies and acceptance of the Work and payment thereof by Owner, Contractor shall promptly pay Subcontractor any balance of the Price.

The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing at law or in equity.

Except as limited by the Subcontract, Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Contractor. Any default by Contractor shall be deemed waived unless Subcontractor shall have given Contractor written notice thereof within 7 days after the occurrence of such default. Subcontractor shall not be entitled to stop the Work or terminate this Subcontract on account of Contractor's failure to pay an amount claimed due hereunder (including changed or extra Work) so long as Subcontractor shall not have adequately substantiated the amount due or so long as a good faith dispute exists as to the amount due. Subcontractor shall not be entitled to stop the Work on account of a default by Contractor unless such default shall have continued for more than 7 days after Contractor's receipt of written notice of such default from Subcontractor.

Subcontractor shall not be entitled to terminate this Subcontract except for a substantial and material breach by Contractor which shall have continued, uncured, for a least an additional 30 days after (1) Subcontractor shall have stopped work in accordance with the requirements hereof and (2) Contractor shall have received written notice of Subcontractor's intention to terminate this Subcontract.

-7-

_WJD_
Contractor Initials

_RaW_
Subcontractor Initials

25.     **Submission of Claim.**   In the event the Subcontractor wishes to file a claim against Owner for extra compensation and/or a time extension, or has any other dispute relative to the performance of the work against the Contracting Owner, such claim or dispute will be processed by the Contractor for the Subcontractor in accordance with the applicable provisions of the contract.  Subcontractor shall have the duty to cooperate with Contractor and Subcontractor shall be afforded a reasonable opportunity to present information and testimony involving its rights.

Contractor shall have the exclusive right to accept or appeal the decision of any authorized person, board, court or tribunal and such final resolution shall be the complete and absolute settlement of Subcontractor's claim.  The Subcontractor shall have no recourse against the Contractor for payment of claims denied or reduced by Contracting Owner.  All costs for processing such claim or dispute on behalf of Subcontractor, including attorneys' fees, shall be borne by Subcontractor.

The pendency of a claim shall not interfere with the progress of the Work by Subcontractor nor limit the right of Contractor to proceed, in good faith, to remedy an alleged default by Subcontractor.

26.     **Early Termination.**   If Owner terminates the Contract or stops the Work for a reason other than the default of Contractor, Contractor may terminate this Subcontract or stop the Work for the same reason, and Subcontractor's rights and remedies (including the basis for compensation) shall be limited to the corresponding rights and remedies available to Contractor under the Contract Documents.  In no event shall Subcontractor be entitled to consequential damages or loss of profits on portions of the Work not yet performed.

27.     **Notices.**   All written notices provided for in the Subcontract Documents shall be deemed given if delivered personally to a responsible representative of the party or if sent by telegram (with written confirmation copy following) or by regular mail to the party at its address specified herein.  Either party may from time to time, by notice to the other as herein provided, designate a different address to which notices to it should be sent.

28.     **Environmental.**   Subcontractor will comply with all Federal, State and Local Laws, rules, regulations and ordinances controlling air, water, noise, solid wastes and other pollution or relating to the storage, transport, release or disposal of hazardous materials, substances or waste.  Subcontractor shall not dispose of any wastes of any kind, whether hazardous or not, on any premises owned or operated by the Contractor or Owner.  Subcontractor shall furnish the Contractor written notice of any and all releases of hazardous wastes or substances whenever such releases are required to be reported to any Federal, State or Local authority.

Such written notice shall identify the substance released, the amount released, and the measures undertaken to clean up and remove the released material and any contaminated soil or water, and shall further certify that no contamination remains. Subcontractor agrees to indemnify and hold harmless the Owner and Contractor, its Officers, Agents and Employees, for all liability, fines, penalties or attorney fees resulting from violation of the above and agrees to reimburse the Owner and the Contractor for all costs and expenses incurred by the Contractor in eliminating or remedying such violations unless such liability, fines or penalties arise from the sole negligence of the Owner and/or the Contractor.

29.     **Miscellaneous.**   (a) All matters relating to the validity, performance or interpretation of this Subcontract shall be governed by the law applicable to the validity, performance or interpretation, as the case may be, of the Contract.

(b) This Subcontract, including the documents incorporated herein by reference, embodies the entire agreement of the parties and supersedes all prior negotiations, agreements and understandings relating to the subject matter hereof.

-8-

_Contractor Initials_

_Subcontractor Initials_

Page 9 of 10

(c)This Subcontract may not be changed in any way except as herein provided or by a writing signed by a duly authorized officer or agent of each party.  No requirement of this Subcontract may be waived except in writing signed by a duly authorized officer of the waiving party.

(d)The provisions of this Subcontract and the Contract Documents are intended to supplement and complement each other.  If, however, any provision of this Subcontract irreconcilably conflicts with a provision of the Contract Documents, the provision imposing the greater duty on the Subcontractor shall govern.

(e)Where the context requires, neuter terms used herein shall include the masculine and feminine, and singular terms shall include the plural, and vice versa.

IN WITNESS WHEREOF, the parties have duly executed this Subcontract as of the date first above written.

ATTEST:

W. C. ENGLISH, INCORPORATED

By _____
Title: Wilson L. Dickerson, Jr., Senior Vice President

Date: _____5/28/09_____

ATTEST:

WILBUR SMITH ASSOCIATES
2108 West Laburnum Avenue, Suite 210
Richmond, VA  23227
                                    Subcontractor

By _____
Title: VICE PRESIDENT

Date: _5/21/09_

Subcontractor Check one:

__X__ Corporation

_____ Partnership/Joint Venture

_____ Individual

_____ Other

(If Corporation, signature
of OFFICER required.)

*Subcontractor's Federal Employer Identification No.: 57-040 5950
(If no E.I. Number, enter Business Owner's Social Security No.)

-9-

Contractor Initials

Subcontractor Initials

## Schedule B ("Insurance")

Pursuant to Paragraph 10, Subcontractor shall maintain at least the following insurance coverages in addition to other coverages or any greater limits required by the Contract Documents:

| | | | |
|---|---|---|---|
| 1. | Workers' Compensation and Employer's Liability | In accordance with the laws of the state in which the work is preformed. | |

| | | | |
|---|---|---|---|
| 2. | Comprehensive General Liability | Bodily Injury (and Death): | $1,000,000.00 Each Occurrence |
| | | Property Damage: | $1,000,000.00 Each Occurrence |
| | | General Aggregate: | $2,000,000.00 |
| | | Personal & Advertising Injury: | $1,000,000.00 Per Person |
| | | Products-Completed Operations | |
| | | Aggregate: | $2,000,000.00 |

| | | | |
|---|---|---|---|
| 3. | Comprehensive Automobile | Bodily Injury (and Death): | $1,000,000.00 Each Person |
| | | | $1,000,000.00 Each Occurrence |
| | | Property Damage: | $1,000,000.00 Each Occurrence |

**W. C. ENGLISH, Incorporated MUST BE NAMED AS ADDITIONAL INSURED ON THE GENERAL LIABILITY POLICY.**

Insurance policies shall provide coverage against the following risks:

| | | | |
|---|---|---|---|
| Comprehensive General Liability | a. | Broad Form Property Damage |
| | b. | Independent Contractors |
| | c. | XCU Hazards (Explosion, Collapse, Underground Damage) |
| | d. | Contractual Liability (Arising from Indemnity Agreement in Subcontract) |
| Comprehensive Automobile Liability | a. | All Owned Vehicles |
| | b. | Non-Ownership Liability |
| | c. | Hired Vehicles |

**THIRTY (30) DAY NOTICE OF CANCELLATION REQUIRED**

-10-

_____
*Contractor Initials*

_____
*Subcontractor Initials*