IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| W.C. ENGLISH, INC., <br>          *Plaintiff,* <br> v. <br> RUMMEL, KLEPPER & KAHL, LLP, *ET AL.*, <br>          *Defendants.* | CASE NO. 6:17-CV-00018 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

   This matter is before the Court upon Defendant Rummel, Klepper & Kahl, LLP's ("RK&K") motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 15). The instant case arises out of a construction subcontract between Plaintiff W.C. English, Inc. ("English") and RK&K involving improvements to Interstate 81 in Rockbridge County, including the replacement of two bridges. The bridgework failed to meet the Virginia Department of Transportation's ("VDOT") design and construction specifications within the agreed timeline. English alleges that RK&K breached their agreement by negligently performing quality assurance on the project, contributing to the project's failure to meet VDOT specifications.

   RK&K asks the Court to dismiss the claims against it because it argues the subcontract between RK&K and English, when viewed in light of the contract between English and VDOT, absolves them of any liability regarding English's failure to complete the bridge work in accordance with VDOT's specifications and timeline. However, the precise meaning of the subcontract is unclear, as it contains seemingly contradictory terms. Because there is ambiguity in the subcontract—the resolution of which is an issue of fact that cannot be settled at this stage—and English has pled facts that could constitute breach under a reasonable interpretation of the contract's ambiguous terms, the Court holds that English has stated a plausible claim

1

against RK&K, and the motion to dismiss will be **DENIED**.

## I. Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. Facts as Alleged

On February 27, 2009, English entered into a contract ("the Contract") with VDOT for construction of improvements to Interstate 81 ("I-81") in Rockbridge County. (Dkt. 1-1 ¶¶ 8, 12–13). The Contract called for construction of a "Truck Climbing Lane," which is an additional

lane or roadway; associated improvements to the shoulder and median; replacement of two bridges on I-81 Northbound; and replacement of one bridge over I-81 Northbound and Southbound near Lexington (collectively "the Project"). (*Id.* ¶ 13). English was responsible to VDOT for designing and constructing the Project, as well as performing Quality Assurance ("QA") and Quality Construction Inspection ("QC"), which are typically performed by VDOT or its consultants. (*Id.* ¶ 14).

The Contract specified that English was to achieve "Substantial Completion" by September 4, 2012, and "Final Completion" by October 30, 2012. (*Id.* ¶¶ 15–16). The Contract contained a series of penalties: (1) $3,000 per day in liquidated damages for failure to meet the Substantial Completion date; (2) $2,000 per day in liquidated damages for failure to meet the Final Completion date; (3) $5,000 per day in monetary disincentives for failure to meet the Substantial Completion date. (*Id.* ¶ 17).

Under the terms of the Contract, the QA and QC functions had to be performed by companies approved by VDOT, licensed to perform professional engineering work in Virginia, and prequalified to perform such work by VDOT. (*Id.* ¶ 19). One or about October 6, 2009, English entered into a subcontract with RK&K ("the QA Subcontract") to perform the QA tasks required by the Contract. (*Id.* ¶ 20). The duties of RK&K under the QA Subcontract were further elaborated in a Construction Quality Assurance Plan ("QA Plan"), prepared by RK&K and approved by both English and VDOT. (*Id.* ¶ 21).

The Contract required English to design and construct a replacement bridge, known as "Bridge B603," for the existing and newly constructed lanes of I-81 Northbound in Rockbridge County. (*Id.* ¶ 30). RK&K, through the actions or omissions of its QA Manager, failed to correctly perform its QA duties by (1) failing to conduct proper inspections; (2) approving noncompliant conditions; and (3) failing to comply with requirements of the QA Manager for

field changes. (*Id.* ¶ 36). These breaches led to VDOT's rejection of the B603 Stage 1 bridge deck following its construction. (*Id.* ¶ 38).

On March 13, 2013, VDOT issued a Notice of Non-Conforming Work with regard to the Stage 1 B603 deck. (*Id.* ¶ 46). English received second and third Notices of Non-Conforming Work on April 1, 2013, and April 5, 2013, respectively. (*Id.* ¶ 47). English hired consultants to analyze the Stage 1 bridge and met multiple times with VDOT to negotiate, but VDOT refused to accept the Stage 1 bridge. (*Id.* ¶¶ 45, 48).

In August 2013, VDOT gave a final directive to remove and replace the deck on the Stage 1 bridge, and English complied with this order. (*Id.* ¶¶ 49–50). Following demolition and reconstruction, the B603 bridge was completed on December 21, 2013. (*Id.* ¶ 53). On February 4, 2016, VDOT executed Work Order 3 with English, which resolved all other outstanding issued between VDOT and English. (*Id.* ¶ 56). Work Order 3 increased the contract price and reduced previous assessment of liquidated damages and disincentives, but it stated that "[n]o adjustment in the contract price or time of performance shall be made for the B603 Stage 1 Demolition and Reconstruction issue." (*Id.*).

The demolition and reconstruction led English to incur additional costs for engineering design, structural and geotechnical analyses, liquidated damages, and disincentive fees. (*Id.* ¶¶ 54–55). English has calculated its total damages due to the demolition and reconstruction to be $3,312,823. (*Id.* ¶ 57).

On April 8 and August 27, 2013, English informed RK&K of a potential claim relating to the QA services RK&K had provided for the project. On January 12, 2017, English filed breach of contract and indemnity claims against RK&K and CDM Smith in the Rockbridge Circuit Court. (Dkt. 1-1 at ECF 1). On January 17, 2017, RK&K, with the consent of CDM Smith, removed the case to this Court. (Dkt. 1 at 1).

4

## III. DISCUSSION

### A. Consideration of Exhibits

In support of its motion to dismiss, RK&K attached four exhibits. (Dkt. 15). As a threshold matter, the Court must determine whether to consider them. English argues that three of these exhibits—the Project QA/QC Plan, the Contract between VDOT and English, and the minimum quality requirements from VDOT—should not be considered at this stage. English asks the Court to disregard them because they are not integral to the Complaint and have been impermissibly excerpted. (Dkt. 23 at 4). Because, as will be made clear below, these documents simply have no bearing on the Court's determination of whether to grant or deny this motion, the Court need not resolve this dispute. These documents simply are not germane to the Court's analysis of the motion, regardless of whether they are considered.

### B. Breach of Contract & Indemnity

Under Virginia law, a plaintiff must establish three elements to demonstrate breach of contract: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 291 Va. 338, 344 (2016). RK&K's current motion argues that English has failed to "plead plausible contract and contractual indemnification claims against RK&K because, as a matter of law, RK&K his not obligated to compensate English for any alleged QA wrongdoing associated with the I-81 bridge work." (Dkt. 16 at 6).[1]

---

[1] This argument somewhat muddles the distinction between the breach of contract claim (Count I) and the contractual indemnity claim (Count II). RK&K's motion could more precisely be characterized as making two distinct arguments: (1) the third element of the breach of contract claim has not been satisfied because the terms of the Subcontract absolve RK&K of liability and thus there are no damages caused by RK&K's alleged breach of its QA duties under the Subcontract; and (2) English has no right to indemnity because the terms of the Subcontract explicitly exempt RK&K from liability. Regardless of how it is characterized, RK&K's claim is

The present motion ultimately turns on a question of contract interpretation. "Ordinarily, it is the duty of the court to construe a written contract when it is clear and unambiguous on its face . . . ." *Online Res. Corp. v. Lawlor*, 285 Va. 40, 54. But when contract language "may be understood in more than one way or when it refers to two or more things at the same time," the contract is considered ambiguous. *Virginia Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 98 (2016). Although "[t]he question of whether the language of a contract is ambiguous is a question of law," *id.*, the resolution of that ambiguity is a question of fact. *Online Res. Corp. v. Lawlor*, 285 Va. 40, 54 (2013). Therefore, at this stage in the litigation, the Court may determine as a matter of law whether the Subcontract is ambiguous, but if found to be ambiguous, the Court cannot resolve that ambiguity. *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992).

English and RK&K signed two different terms sheets that have conflicting terms, which ultimately render the Subcontract ambiguous. The first terms sheet is entitled Standard Terms and Conditions to Proposal for Consulting Engineering Services Between Rummel, Klepper & Kahl, LLP and Contractor ("the RK&K Terms Sheet"), (dkt. 21-1 at ECF 16), which was produced by RK&K.[2] The second terms sheet does not have a title, but bears the English letterhead ("the English Terms Sheet"), (dkt. 21-1 at ECF 18), and was provided by English. The Court must consider both terms sheets because "when parties have entered into two documents relating to a business transaction, the writings will be construed together to determine the parties' intent" *First Am. Bank of Virginia v. J.S.C. Concrete Const., Inc.*, 259 Va. 60, 67 (2000).

---

ultimately the same: It claims the terms of the Subcontract discharge it of any liability for English's failure to satisfy the Contract with VDOT.

[2] The RK&K Terms Sheet does not bear the signatures of the parties, but both sides appear to agree that it was part of the Subcontract.

The two terms sheets contain clauses that contradict one another. The English Terms Sheet states, in relevant part, the following:

> Should Owner or any other person assert a claim or institute a suit, action or proceeding against Contractor *involving the manner or sufficiency of the Work, Subcontractor shall indemnify and save harmless Contractor* and its servants and employees, from and against any liability, loss, damage, or expense arising out of or relate [*sic*] to such claim, suit, action, or proceeding, to the extent directly caused by the negligence of subcontractor but not to the extent caused by the acts or omissions of Contractor or its subcontractors or consultants of any tier.

(Dkt. 21-1 at ECF 20 (emphasis added)). Meanwhile, the RK&K Terms Sheet states:

> RK&K assumes no responsibility for the construction means, methods, sequences, safety precautions or safety programs in connection with the construction project. . . . Performance of QA phase services shall not be construed to relieve [English] from responsibility to perform the construction work in accordance with the Construction Documents and accepted industry standards. *RK&K is not responsible for the Contractor§s* [*sic*] *failure to perform the construction work in accordance with the Construction documents*.

(Dkt. 21-1 at ECF 16 (emphasis added)). The English Terms Sheet specifies that—under certain circumstances—RK&K has a duty to indemnify English against claims involving the manner and sufficiency of the work ("Subcontractor shall indemnify . . ."), but the RK&K Terms Sheet states that it is not responsible for English's failure to perform the construction work in accordance with VDOT's standards ("RK&K is not responsible for [English's] failure to perform the construction work . . ."). These clauses are clearly in conflict.

Nevertheless, "in construing contract documents as a whole, the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it." *First Am. Bank of Virginia*, 259 Va. at 69 (internal quotations and citation omitted). "In other words, when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language." *Id.* (citation omitted).

As such, the Court will not simply ignore these conflicting clauses or interpret one at the

7

expense of the other. Instead, the Court will seek to construe the entire Subcontract in a way that reconciles the conflict. However, there is not one clear way to reconcile these conflicting clauses. For instance, the scope of RK&K's liability could vary greatly based on how these two conflicting clauses interact. The indemnity clause from the English Terms Sheet could be read broadly or narrowly based upon how broadly or narrowly the RK&K Terms Sheet is interpreted. While "a contract is not ambiguous merely because the parties disagree as to the meaning of the terms used," *Virginia Fuel Corp.*, 291 Va. at 98, here there is a genuine dispute about how these clauses interact and their collective meaning. Seeing as these clauses could be "understood in more than one way," *id.*, the Court finds that as a matter of law the Subcontract is ambiguous as to the issue of RK&K's liability for English's failure to satisfy the Contract with VDOT.

Therefore, because "the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim," *Martin Marietta Corp.*, 991 F.2d at 97; *see also Online Res. Corp.*, 285 Va. at 54, the Court cannot reach a final resolution of these ambiguous terms at this stage in the litigation. However, the Court's determination that the Subcontract is ambiguous does not itself prevent dismissal of the case. Instead, the Court must still consider whether the ambiguous terms of the Subcontract could be reasonably read to create breach of contract and indemnity liability. If no reasonable interpretation of this ambiguity would trigger liability for RK&K, then the ambiguity would be irrelevant, and the motion could be granted. Nevertheless, the Court will draw all inferences in Plaintiff's favor, *Chao* 415 F.3d at 346, including the resolution of this contractual ambiguity.

The RK&K Terms Sheet, which purports to absolve RK&K of liability, can be read as being implicitly limited by and subject to the clauses in the English Terms Sheet discussing specific circumstances that trigger indemnity. Put another way, the conflicting contract terms can be harmonized using something akin to the canon of statutory construction that the specific

governs the general. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2068, 2071 (2012) ("To eliminate the contradiction, the specific provision is construed as an exception to the general one."). Here, the general protection from liability found in the RK&K Terms Sheet ("RK&K is not responsible . . .") can be read to establish a baseline rule, while the more specific indemnity clause found in the English Terms Sheet ("Subcontractor shall indemnify . . .") can be read to create an exception to that baseline rule. Thus, these clauses can be given a "reasonable interpretation consistent with the other portions of the contract" without necessarily absolving RK&K of all liability. *First Am. Bank of Virginia*, 259 Va. at 69.

Accordingly, the Court finds that the Subcontract does not, as a matter of law, preclude Plaintiff's breach of contract and indemnity claims because the Subcontract can be reasonably interpreted to permit breach and indemnity actions against RK&K "to the extent directly caused by the negligence of subcontractor but not to the extent caused by the acts or omissions of [English] or its subcontractors or consultants of any tier." (Dkt. 21-1 at ECF 20). It is uncontested that English has alleged facts sufficient to demonstrate the following: (1) RK&K failed to perform its QA duties; (2) only RK&K was authorized to perform QA duties; and (3) these QA errors in turn led to delay, expense, and monetary fines that were paid by English. (Dkt. 1-1 ¶¶ 19, 36, 38, 54–57). Therefore, seeing as the Subcontract does not unambiguously preclude liability and the facts found in the Complaint are sufficient, the Court finds that English has pled a plausible claim for breach of contract and indemnity against RK&K.

### IV. CONCLUSION

It is uncontested that the Complaint alleges facts sufficient to establish that RK&K breached its contractual QA duties and that its breach damaged English. Nevertheless, RK&K argues that the terms of the Subcontract expressly absolve it of all liability. This argument fails because the conflicting terms in the Subcontract create a material ambiguity that cannot be

resolved at this stage in the litigation. Instead, because the Subcontract can be reasonably read to create a legally enforceable indemnity obligation and all reasonable inferences are resolved in Plaintiff's favor, the claims do not fail as a matter of law. Therefore, seeing as the Complaint alleges facts sufficient to establish claims for breach of contract and indemnity and the Subcontract does not preclude these claims as a matter of law, the motion to dismiss pursuant to Rule 12(b)(6) will be **DENIED**.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to Plaintiff, Defendants, and all counsel of record. An appropriate Order will issue.

Entered this  16th  day of May, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE